Affirmed and Memorandum Opinion filed April 7, 2009








Affirmed
and Memorandum Opinion filed April 7, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-01017-CR

____________

 

JOSE DELEON HERNANDEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 400th
District Court

Fort Bend County, Texas

Trial Court Cause No. 45,818A

 



 

M E M O R A N D U
M  O P I N I O N

A jury found
appellant Jose Deleon Hernandez guilty of aggravated assault and assessed
punishment at 99 years= confinement.  In his sole issue on
appeal, appellant contends that the evidence is insufficient to show that the
weapon used in the aggravated assault was a deadly weapon.  We affirm.








Background

 

Appellant and the
complainant Sharla Helms were social acquaintances.  Appellant began showing up
at the complainant=s house and workplace unannounced and
uninvited.  On November 18, 2006, appellant came to the complainant=s house uninvited
wearing a blue jumpsuit, gloves, ski cap, and sunglasses.  When the complainant
questioned appellant=s attire, appellant became angry; grabbed
the complainant=s hair; punched her several times in the
face; pulled out a box cutter knife; and told her, AToday is going to
be your day to die.@

The complainant
tried to calm appellant down, but he continued to grab her hair, hit her, hold
the knife to her throat, and tell her that he was going to kill her.  Appellant
tried to lay the complainant=s head on the coffee table so he could cut
her throat.  After about 90 minutes, the complainant convinced appellant to go
with her to a store to get gas.  

Appellant and the
complainant left in the complainant=s car.  The
complainant was driving at first, but halfway to the store, appellant told the
complainant to pull over so he could drive.  They  stopped near Justin
Kalinowski=s ranch.  As appellant was going around the car to sit
in the driver=s seat, the complainant saw people on the ranch,
leaned outside the passenger window, screamed for help, and honked the horn. 
Kalinowski=s employee, Nickalos Pavlock, heard the complainant=s cry for help and
saw appellant grabbing the complainant=s hair and jerking
her back into the car.  Appellant started choking her and cut her throat.  

Kalinowski, who
was with Pavlock, approached the car and saw the complainant laying in
appellant=s lap.  Appellant had one hand on the complainant=s chest and the
other on her throat choking her.  When Kalinowski inquired if everything was
all right, the complainant struggled to sit up.  Appellant pushed her back down
and cut her throat with a box cutter knife.  The complainant asked Kalinowski
for help and said, AHe=s going to kill
me.@  








Kalinowski
retrieved his rifle from his truck, went back to the car, and pointed his rifle
at appellant through the passenger door.  Appellant told the complainant, AThis is your last
day,@ and cut her
throat.  Pavlock approached the car from the opposite side and grabbed 
appellant=s head.  Appellant cut the complainant=s throat one last
time before he started swinging the knife at Pavlock.  Kalinowski managed to
grab the complainant, jerked her out of the car, and instructed her to stay
behind his truck.  Pavlock let go of appellant because he continued trying to
cut Pavlock.

Appellant stepped
out of the car and kept approaching Kalinowski with the box cutter. Kalinowski
fired a warning shot, but appellant continued to approach Kalinowski with the
box cutter.  Pavlock hit appellant in the face with a stick.  Appellant then
started walking away, and Kalinowski called 9-1-1.  Three police officers C Sergeant Scott
Soland, Deputy Charles Scott, and Officer Chris Murphy C ultimately
subdued and arrested appellant, and retrieved the box cutter.

At trial, the
complainant testified that appellant had threatened to kill her more than a
dozen times on November 18, 2006.  She testified that she received ten to
fifteen stitches for multiple cuts appellant inflicted with the box cutter. 
The complainant stated that she was in the hospital for approximately eight
hours, and that three doctors inspected her wounds because the cuts were so
deep and near a main artery.  The complainant and Kalinowski identified State=s Exhibit # 1 as
the box cutter appellant used to threaten and cut the complainant.  Sergeant
Soland and Deputy Scott also identified State=s Exhibit # 1 as
the box cutter knife appellant held in his hand at the time of his arrest.

At trial, the
complainant testified that the box cutter appellant used to cut her is capable
of causing serious bodily injury or death.  Pavlock testified that the box
cutter could be used in such a way as to Aeasily@ kill someone. 
Kalinowski agreed that the box cutter is capable of being used to kill a
person.  Further, Sergeant Soland testified that the box cutter could be used
to Akill someone@ or Ahurt someone bad;@ and Deputy Scott
testified that the box cutter can Ahurt someone@ or Akill someone.@








Analysis

 

In his sole issue,
appellant argues that the evidence is insufficient to show that the box cutter
knife used in the assault was a deadly weapon.  Appellant argues that a box
cutter is not a deadly weapon per se and that the injuries inflicted upon the
complainant were not serious bodily injuries so as to render the box cutter a
deadly weapon in this case.  Appellant also contends that the State failed to
provide the jury with expert testimony establishing that Athe weapon was
used or intended to be used in such a way that it was >capable of causing
death or serious bodily injury.=@  

Appellant=s issue and
argument do not indicate whether he challenges the legal or factual sufficiency
of the evidence.  The argument contains no indication of the standard of
review, nor does the argument conclude with a prayer for relief by acquittal or
reversal and remand for a new trial. However, his brief concludes with a
request that we order an acquittal or, in the alternative, reverse and remand
for a new trial.  In the interest of justice, we evaluate the evidence under
both legal and factual sufficiency standards.

In reviewing legal
sufficiency of the evidence, an appellate court will examine the evidence in
the light most favorable to the verdict to determine whether any rational
finder of fact could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Salinas
v. State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  When reviewing legal
sufficiency of the evidence, the court may not re‑evaluate the weight and
credibility of the record evidence or substitute its judgment for that of the
fact finder.   Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). 








When conducting a
factual sufficiency review, an appellate court must determine (1) whether the
evidence introduced to support the verdict is Aso weak@ that the fact
finder=s verdict seems Aclearly wrong and
manifestly unjust,@ and (2) whether, considering conflicting
evidence, the fact finder=s verdict is nevertheless against the
great weight and preponderance of the evidence.  Watson v. State, 204
S.W.3d 404, 414‑15 (Tex. Crim. App.  2006).  The appellate court reviews
the evidence in a neutral light in a factual sufficiency review.  Id. at
414.  An appellate court should not substantially intrude upon the fact finder=s role as the sole
judge of the weight and credibility of witness testimony.  Vasquez v. State,
67 S.W.3d 229, 236 (Tex. Crim. App. 2002).  Due deference still must be given
to the fact finder=s determinations concerning the weight and
credibility of the evidence, and reversal of those determinations is only
appropriate to prevent the occurrence of a manifest injustice. Martinez v.
State, 129 S.W.3d 101, 106 (Tex. Crim. App. 2004).

A person commits
aggravated assault if he commits assault and either (1) causes serious bodily
injury to another, or (2) uses or exhibits a deadly weapon during the
commission of the assault.  Tex. Penal Code Ann. ' 22.02(a) (Vernon
Supp. 2008); Ferrel v. State, 55 S.W.3d 586, 589 (Tex. Crim. App.
2001).  ASerious bodily
injury@ is Abodily injury that
creates a substantial risk of death or that causes death, serious permanent
disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.@  Tex. Penal Code Ann. ' 1.07(a)(46)
(Vernon Supp. 2008).  A deadly weapon is A(A) a firearm or
anything manifestly designed, made, or adapted for the purpose of inflicting
death or serious bodily injury; or (B) anything that in the manner of its use
or intended use is capable of causing death or serious bodily injury.@  Tex. Penal Code
Ann. ' 1.07(a)(17)
(Vernon Supp. 2008).

In this case, the
court=s charge
instructed the jury to find the defendant guilty if it found from the evidence
that appellant Adid intentionally or knowingly cause
bodily injury to [complainant] and . . . use or exhibit a deadly weapon, namely
a box cutter or a sharp object.@  Both the indictment and the application
paragraph of the aggravated assault charge indicate that appellant was charged
with committing the aggravated assault by using or exhibiting a deadly weapon,
rather than by causing serious bodily injury.  








A box cutter knife
is not a deadly weapon per se.  See Tucker v. State, 274 S.W.3d 688, 691
(Tex. Crim. App. 2008); Lafleur v. State, 106 S.W.3d 91, 95 (Tex. Crim.
App. 2003) (en banc); Thomas v. State, 821 S.W.2d 616, 619‑20
(Tex. Crim. App. 1991) (en banc).  Consequently, the State had to prove that
the box cutter was, in the manner of its use or intended use, capable of
causing death or serious bodily injury.  See Tex. Penal Code Ann. ' 1.07(a)(17). 
Factors to consider in determining whether a knife qualifies as a deadly weapon
include (1) the size, shape, and sharpness of the knife; (2) the manner in
which appellant used the weapon; (3) the nature of any inflicted wounds; (4)
testimony concerning the knife=s life‑threatening capabilities; and
(5) the words appellant spoke.  See Thomas, 821 S.W.2d at 619; Tisdale
v. State, 686 S.W.2d 110, 111 (Tex. Crim. App. 1984) (en banc).  Expert
testimony is not required to prove that a weapon is deadly; both expert
testimony and lay testimony may be independently sufficient to establish that a
weapon is deadly.  See English v. State, 647 S.W.2d 667, 668‑69
(Tex. Crim. App. 1983) (en banc); Banargent v. State, 228 S.W.3d 393,
398-99 (Tex. App.CHouston [14th Dist.] 2007, pet. ref=d).          Appellant
asserts that (1) the complainant=s injuries were
not serious, and that she was treated and released from the hospital after a
few hours; and (2) the State provided no expert testimony establishing that Athe weapon was used
or intended to be used in such a way that it was >capable of causing
death or serious bodily injury.=@  

The actual
infliction of serious bodily injury or death is not the test for determining
whether an object is a deadly weapon.  See Tucker, 274 S.W.3d at 691.  AThe State is not
required to show that the >use or intended use causes death or
serious bodily injury= but that the >use or intended
use is capable of causing death or serious bodily injury.=@ Id.
(emphasis in original).  Accordingly, we reject appellant=s argument that a
box cutter is not a deadly weapon if the complainant did not suffer serious
bodily injury.  See  Davidson v. State, 602 S.W.2d 272, 273 (Tex. Crim.
App. [Panel Op.]1980) (wounds need not be inflicted before a knife can be
determined to be a deadly weapon).

While the
complainant did not testify how long and sharp the blade of the box cutter was,
she identified the weapon at trial; it was admitted into evidence; and the jury
was able to see how long and sharp the knife was.  The complainant testified
that appellant held the box cutter to her throat almost continually for
approximately two to three hours and threatened to kill her more than a dozen
times.  








She testified that
appellant cut her several times, and that she received ten to fifteen stitches
for the multiple wounds appellant inflicted with the box cutter.  The State
also introduced pictures of the complainant showing the length of the cuts on
her throat.  The complainant testified that she was in the hospital for
approximately eight hours, and that three doctors inspected her wounds because
the cuts were so deep and near a main artery.

Further, the
complainant testified that the box cutter appellant used to cut her is capable
of causing serious bodily injury or death.  Pavlock testified that the box
cutter could Aeasily@ kill someone.  Kalinowski agreed that the
box cutter is capable of killing a person and stated, ADamn near killed
[the complainant].@  Kalinowski also agreed that the way
appellant was using the box cutter Amost definitely@ could have killed
the complainant.

Finally, two
police officers also testified that the box cutter was a deadly weapon.
Sergeant Soland testified that the box cutter could be used to Akill someone . . .
by slitting their throat@ or Ahurt someone bad.@  And Deputy Scott
confirmed that the box cutter can Ahurt someone@ or Akill someone . . .
if you use it on a throat.@

Reviewing the
evidence in the light most favorable to the verdict, we hold that the evidence
is legally sufficient to show that the weapon used in the assault was a deadly
weapon.  Viewing the evidence in this case in a neutral light, we conclude that
the evidence is factually sufficient to show that appellant used a deadly
weapon during the assault.

 

Conclusion

We overrule
appellant=s sole issue and affirm the trial court=s judgment.

 

 

 

/s/      William J. Boyce

Justice

 

Panel consists of
Justices Frost, Brown, and Boyce.

Do Not Publish C Tex. R. App. P. 47.2(b).