Robert Lee BANARGENT, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–05–01089–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 31, 2007.

Robert Lee Banargent, Richmond, pro se.

Chad E. Bridges, Richmond, for appellee.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

**OPINION**

EVA M. GUZMAN, Justice.

A jury found appellant Robert Lee Banargent guilty of aggravated assault and found that he used a deadly weapon, namely a knife, during the commission of the offense. After finding three enhancement paragraphs alleging sequential felonies to be true, the jury assessed punishment at confinement for life in the Texas Department of Criminal Justice, Institutional Division, and assessed a fine of $10,000. In four issues, appellant challenges the legal and factual sufficiency of the evidence, the admission of recordings of telephone calls he made from jail, and the denial of his requested jury instruction relating to the recordings. We affirm.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Brenda Brent and appellant met in 1999, and at the time of the offense, they had lived together for a little over a year and a half. By October 2004, their relationship was ending. On October 29, 2004, Brent was in their living room when appellant entered and said something. Brent told appellant she "didn't want to hear it this morning." She then felt something strike her back and neck. She initially thought it was a fist. When appellant stabbed her on the side of her neck, Brent "knew it was a knife then."

Appellant changed clothes and left the house, but he returned a short time later and stabbed Brent behind her ear, on the back of her neck, on her back, and on her arm. According to Brent, appellant told her that he wanted her to die. Brent further testified that, as a result of her injuries, she could no longer walk or use the fingers on her right hand and could no longer go to the restroom on her own.

Zeno Alexander, a Houston Fire Department paramedic, treated Brent at the scene. Alexander had been employed as a paramedic for nine years and had responded to over one hundred calls for critical care-instances of severe trauma and life threatening emergencies. When Alexander arrived, appellant told him that someone had broken into the home and attacked Brent. Alexander testified that Brent's clothes were saturated with blood and there was blood on the carpet. He also testified that Brent's injuries were the type that can result in death if not treated. Alexander was concerned about one injury close to the spine and another close to the jugular vein. According to Alexander, Brent's wounds were consistent with the use of a large-bladed knife. On cross-examination, Alexander testified that he had no doubt that Brent's wounds were inflicted by a knife.

Appellant was still at the house when Houston Police Officer A.C. Holub arrived. Appellant told Holub that someone jumped from Brent's closet and attacked her. Holub saw no signs of forced entry, and he observed that the primary concentration of blood was in the living room. Officer Lorenzo Verbitsky, a crime scene investigator from the Houston Police Department, also inspected the home and found no signs of forced entry. While Holub was clearing the crime scene before the paramedics removed Brent, appellant left the house.

Officer Daniel Quam, Detention Administrative Sergeant of the Fort Bend County Sheriff's Office, testified that he is involved with technical support, which includes the jail management system, the telephone record system, and cellular telephones. He oversees the collection and copying of jail telephone calls made by inmates and is the custodian of those records. Quam explained that each inmate at the Fort Bend County Jail has a specific and unique personal identification number used to sort the calls recorded on Global Tel, Inc.'s inmate phone recording system. Quam is responsible for downloading calls to compact disc for use by law enforcement. Quam testified that he downloaded the calls for appellant's identification number onto a compact disc and identified State's Exhibit 12 as that disc.

Alan Bishop of Global Tel, Inc. testified that he has a degree in electronics engineering, was a satellite communications specialist in the United States Army, and has worked with Global Tel's inmate phone recording system, called the "laser phone platform," from the program's inception to the present. Bishop explained how the laser telephone platform works. Telephone calls are made from the jail on analog telephone lines. The calls are then stored digitally. Bishop testified that several prompts are used, including a prompt that informs the parties to the call that the call may be monitored or recorded. Postings throughout the facility also inform the inmates that their calls may be monitored or recorded. Before a person receiving a call decides whether to accept it, he has been informed that it is being recorded. On cross-examination, Bishop testified that there is no prompt asking either party whether they consent to the recording of the call.[1]

Bishop also testified about the safeguards used to insure that telephone calls are accurately recorded, including a proprietary software encryption program. Using the disc that Quam identified, Bishop demonstrated how the laser phone platform could authenticate the accuracy of a digitally-recorded inmate telephone call.

The State then recalled Brent, who identified appellant's voice on two telephone calls on the disc. At the beginning of each call, a message indicated that it may be recorded or monitored. In one of the calls, appellant admitted that he stabbed Brent, but claimed that he acted in self-defense. Over appellant's objection, the trial court admitted the disc as State's Exhibit 12, and at least part of the disc was played to the jury.[2]

Appellant's defense suggested that Brent's former boyfriend committed the assault. In support of this theory, appel-

---

1. On cross-examination, Quam stated that inmates are not asked for their written consent to the recording of their telephone calls.

2. Appellant objected to this evidence "under article 38.23 of the Texas Code of Criminal Procedure" because the evidence allegedly was obtained in violation of Texas Penal Code section 16.02 dealing with unlawful interception of wire, oral, or electronic communications. He also raised objections to the evidence on relevance, hearsay, authentication, and best evidence grounds.

lant recalled Brent and introduced two Houston Police Department offense reports documenting Brent's complaints against the former boyfriend.

At the close of evidence, appellant requested a jury instruction on the law of illegally-obtained evidence, pursuant to Texas Code of Criminal Procedure 38.23. The trial court denied the request.

The jury found appellant guilty of aggravated assault as charged in the indictment and answered yes to the special issue concerning use of a deadly weapon. At the conclusion of the punishment phase, the jury found three enhancement paragraphs alleging sequential felonies true and assessed punishment at confinement for life and a fine of $10,000.

## II. ISSUES PRESENTED

Appellant presents four issues for our review. In his first two issues, he challenges the legal and factual sufficiency of the evidence to support his conviction of aggravated assault with a deadly weapon. In his third issue, he contends that the trial court erred in admitting recordings of telephone calls he made from the jail. In his fourth issue, he contends that the trial court erred in denying his request for an instruction under Texas Code of Criminal Procedure article 38.23(a) that the jury disregard illegally obtained evidence.

## III. ANALYSIS

### A. LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE

In his first and second issues, appellant contends the evidence is legally and factually insufficient to support his conviction for aggravated assault with a deadly weapon. When reviewing the legal sufficiency of the evidence, we do not ask whether we believe that the evidence at trial established guilt beyond a reasonable doubt.

*Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Rather, we examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Id.* at 319, 99 S.Ct. at 2789; *Mason v. State,* 905 S.W.2d 570, 574 (Tex.Crim.App. 1995).

When reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light and set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. State,* 958 S.W.2d 404, 407 (Tex.Crim.App.1997) (quoting *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996)). Before we may reverse for factual insufficiency, we must first be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App.2006). When reviewing the evidence, we must avoid intruding on the factfinder's role as the sole judge of the weight and credibility of the witnesses' testimony. *Johnson v. State,* 23 S.W.3d 1, 9 (Tex.Crim.App.2000). We do not re-evaluate the credibility of the witnesses or the weight of the evidence, and will not substitute our judgment for that of the factfinder. *Johnson v. State,* 967 S.W.2d 410, 412 (Tex.Crim.App.1998).

■ A person commits aggravated assault if he commits assault and (1) causes serious bodily injury to another or (2) uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. § 22.02(a) (Vernon Supp.2006); *Ferrel v. State,* 55 S.W.3d 586, 589 (Tex. Crim.App.2001). "Serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted

loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon Supp. 2006); *Ferrel,* 55 S.W.3d at 590. A deadly weapon is "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon Supp.2006).

In the present case, the court's charge required the jury to find the defendant guilty if it found from the evidence that appellant "did intentionally or knowingly cause serious bodily injury to Brenda Brent by cutting her with a knife." Thus, both the indictment and the application paragraph of the aggravated assault charge indicate that appellant committed the aggravated assault by causing serious bodily injury, rather than by using or exhibiting a deadly weapon. The jury charge, however, also included a special issue on use of a deadly weapon. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon 2006).

Appellant appears to direct his legal sufficiency challenge to the evidence that he used a knife, not to evidence that the weapon used was a deadly weapon or to evidence that he caused serious bodily injury. In his factual sufficiency challenge, he refers briefly to evidence regarding his use of a knife, but focuses primarily on evidence regarding serious bodily injury. The nature of appellant's complaint is not entirely clear, but we address the legal and factual sufficiency of the evidence regarding (1) the type of weapon, (2) whether it was a deadly weapon, and (3) whether appellant caused serious bodily injury.

### 1. *Evidence that the Weapon was a Knife*

■ Although Brent testified that she never actually saw the knife and initially thought that appellant hit her with his fist, she knew that he was using a knife when he stabbed her in the side of her neck. The treating paramedic, who had nine years' experience and had responded to over one hundred calls for critical care, had no doubt that a knife caused Brent's wounds, and testified that her wounds were consistent with the use of a large-bladed knife. Finally, in one of the recorded telephone calls, appellant stated, "I ended up stabbing her. She cut my hand, pulled a knife on me."

Appellant, however, points to the absence of any reference to a knife in the paramedic's report, to the paramedic's lack of a medical degree, and to Brent's admission that she did not see a knife. But these aspects relate to the weight of the evidence and the credibility of the witnesses, and such matters are for the jury to decide. *See Johnson,* 967 S.W.2d at 412. Assuming without deciding that the State had to prove that the weapon was a knife, we conclude the evidence is legally and factually sufficient to do so.

### 2. *"Deadly Weapon"*

■ Knives are not necessarily deadly weapons under subsection (A) of Texas Penal Code section 1.07(a)(17). *See Lafleur v. State,* 106 S.W.3d 91, 95 (Tex.Crim. App.2003); *Thomas v. State,* 821 S.W.2d 616, 619–20 (Tex.Crim.App.1991) (en banc). Factors to consider in determining whether the knife qualified as a deadly weapon under subsection (B) include (1) the size, shape, and sharpness of the knife; (2) the manner in which appellant used the weapon; (3) the nature of any inflicted wounds; (4) testimony concerning the knife's life-threatening capabilities; and (5) the words appellant spoke. *See Thomas,* 821 S.W.2d at 619; *Tisdale v. State,* 686 S.W.2d 110, 111 (Tex.Crim.App.1984) (en banc). Both

expert testimony and lay testimony may be independently sufficient to support a deadly weapon finding. *English v. State*, 647 S.W.2d 667, 668–69 (Tex.Crim.App. 1983) (en banc). It is not necessary for the weapon to be introduced into evidence. *See Morales v. State*, 633 S.W.2d 866, 868 (Tex.Crim.App.1982).

In the present case, the paramedic testified that Brent's wounds were consistent with the use of a large-bladed knife. Appellant used the knife to inflict multiple wounds on Brent, including one near the jugular vein and one near her spine. Moreover, the paramedic testified that her injuries were the kind that can cause death if not treated, and Brent testified that appellant said he wanted her to die. Appellant, however, does not direct our attention to any evidence weighing against the finding that he used a deadly weapon.

After reviewing the record under the applicable standard of review, we conclude the evidence is legally and factually sufficient to support the deadly weapon finding. *See Walters v. State*, 37 Tex.Crim. 388, 389, 35 S.W. 652 (1896) (holding nature of wounds sufficient to establish pocketknife as a deadly weapon).

### 3. "Serious Bodily Injury"

 Serious bodily injury is bodily injury plus one or more of the following effects: (1) a substantial risk of death, (2) death, (3) serious permanent disfigurement, (4) protracted loss of the function of any bodily member, (5) protracted impairment of the function of any bodily member, (6) protracted loss of the function of any bodily organ, or (7) protracted impairment of the function of any bodily organ. *Moore v. State*, 739 S.W.2d 347, 355 (Tex. Crim.App.1987) (en banc) (Clinton, J., concurring). Whether an injury constitutes "serious bodily injury" must be determined on a case-by-case basis. *See id.* at 352.

In his factual insufficiency argument, appellant contends the evidence is insufficient because there was no testimony from a doctor regarding the severity of Brent's injuries. In support of this argument, he cites *Williams v. State*, 696 S.W.2d 896 (Tex.Crim.App.1985) (en banc). In *Williams*, the Court of Criminal Appeals criticized the lack of evidence of serious bodily injury, in part, as follows:

> The complainant stayed in the hospital less than two days.

> No testimony was offered as to the seriousness of appellant's injuries except for the introduction of hospital records by the custodian thereof. As discussed above, these records indicate that no transfusion was necessary, that two bullet wounds and one "hole" were found on the complainant, they indicate that no surgery was performed, and that two bullets were left lodged in the complainant.

> No testimony, expert or non-expert, was offered suggesting that the complainant had suffered either a substantial risk of death or a serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

> . . .

> The evidence presented by the State is not sufficient to prove serious bodily injury. The complaining witness never testified to the extent of his injuries, nor was any evidence shown in the medical records that those injuries created a substantial risk of death, or caused death, permanent disfigurement, or protracted loss or impairment of the functions of any bodily member or organ. No testimony, whatsoever, was offered to prove serious bodily injury.

*Id.* at 897–98 (citation omitted).

*Williams* is readily distinguishable.[3] In the present case, Brent testified to the extent of her injuries and demonstrated that, by the time of trial, she still did not have use of the fingers of her right hand and could not walk. Her testimony is evidence of the "protracted loss or impairment of the functions" of her legs and the fingers of her right hand. In addition, the attending paramedic testified that Brent's injuries were the kind that can cause death if not treated, and medical records indicate injury to the spine and a two-week hospital stay.

We conclude the evidence is legally and factually sufficient to support appellant's conviction and therefore overrule appellant's first two issues.

**B. ADMISSION OF RECORDED TELEPHONE CONVERSATIONS**

In his third issue, appellant challenges the trial court's admission of certain recordings of telephone calls appellant made from the county jail. He argues that the recordings (1) were not properly authenticated and (2) were inadmissible under Texas Code of Criminal Procedure article 38.22 because they contained statements made as a result of custodial interrogation.[4]

 We review a trial court's admission of evidence for abuse of discretion. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000); *Ford v. State,* 179 S.W.3d 203, 210 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd), *cert. denied,* —— U.S. ——, 127 S.Ct. 281, 166 L.Ed.2d 215 (2006). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the trial court acted without reference to any guiding rules or principles. *Hernandez v. State,* 53 S.W.3d 742, 750 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). To preserve a complaint for appeal, an appellant's objection at trial must comport with his objection on appeal. *See Ramirez v. State,* 815 S.W.2d 636, 646 (Tex.Crim.App.1991) (en banc).

**1. Authentication**

 Appellant argues, in part, that the recordings "lacked authenticity and integrity." In the trial court, he objected on the ground of "improper authentication pursuant to Rule 901 of the Texas Rules of Evidence" because Brent could identify only appellant's voice, and not the other voice, on the recording.

Rule 901 provides in relevant part:

(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

---

**3.** Appellant also cites *Villarreal v. State,* apparently to suggest that Brent's injuries were comparable to those held not to constitute serious bodily injury. *See Villarreal,* 716 S.W.2d 651, 652 (Tex.App.-Corpus Christi 1986, no pet.). In *Villarreal,* the victim sustained a bruise and lacerations to his face, and two fractured ribs. *Id.* The appellate court concluded evidence of the victim's inability to raise his arms for two weeks caused by the pain of the two fractured ribs, and the fractured ribs themselves, were insufficient to show that appellant caused "serious bodily injury." *Id.* In the present case, Brent in-

·curred injuries such that she was unable to use her legs and one hand, at a minimum, for almost a year after the assault. *Villarreal* is neither comparable nor controlling.

**4.** In his third issue, appellant also alludes briefly to an alleged violation of Texas Penal Code section 16.02, relating to electronic surveillance. Because appellant develops this argument only in the context of his fourth issue, we discuss the argument in connection with that issue.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of witness with knowledge. Testimony that a matter is what it is claimed to be.

. . .

(5) Voice identification. Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker.

. . .

(9) Process or system. Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

Tex.R. Evid. 901.

In the present case, Officer Quam identified State's Exhibit 12 as the disc containing digital recordings of telephone calls appellant made. Using this exhibit, Bishop demonstrated how the recording system authenticates the accuracy of a digitally recorded inmate telephone call. Finally, Brent identified appellant's voice as one of the voices on the recordings. We therefore conclude the recordings were properly authenticated. *See Angleton v. State*, 971 S.W.2d 65, 67–68 (Tex.Crim.App.1998) (en banc) (applying Rule 901(b)(1), (4), and (5) to hold audiotape properly authenticated). It was not necessary for Brent to identify both voices to establish that the digital recording was what the State claimed it to be. *See Jones v. State*, 80 S.W.3d 686, 689 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (stating court is unwilling to read into Rule 901 a requirement that each person, no matter how irrelevant to case, be identified by name).

**2. Purported Custodial Interrogation and Improper Admission under Article 38.22**

 Appellant also argues that the trial court abused its discretion by admitting the recorded calls because the recordings are purportedly the product of custodial interrogation and do not meet the requirements of article 38.22, section 3 of Texas Code of Criminal Procedure.[5] Although appellant presented the trial court with an objection under article 38.23, the record is devoid of any indication that he objected under article 38.22. Thus, he has not preserved this objection. *See* Tex.R.App. P. 33.1(a)(1)(A) (requiring complaint be made with sufficient specificity to make trial court aware of complaint, unless specific

---

**5.** Section 3 provides in part:

(a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(1) an electronic recording, which may include motion picture, video tape, or other visual recording, is made of the statement;

(2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

(3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered;

(4) all voices on the recording are identified; and

(5) not later than the 20th day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.

Tex.Code Crim. Proc. Ann. art. 38.22 § 3(a) (Vernon 2005).

grounds were apparent from context); *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim.App.1991) (en banc) (stating point of error on appeal must correspond to objection made at trial).

Even if we were to assume that appellant preserved a complaint under article 38.22, his argument is without merit. Appellant's telephone conversation, although made while in custody, did not constitute custodial interrogation. *See State v. Scheineman*, 77 S.W.3d 810, 813 (Tex. Crim.App.2002) (en banc) (observing that no custodial interrogation occurred when the defendant's custodial statement was not made in response to interrogation by law enforcement personnel but instead was made when the defendant was alone with a co-defendant).

We conclude the trial court did not abuse its discretion in admitting the recordings of appellant's telephone conversations and therefore overrule appellant's third issue.

### C. DENIAL OF APPELLANT'S REQUEST FOR AN ARTICLE 38.23(A) INSTRUCTION

 In his fourth issue, appellant contends the trial court erred by failing to instruct the jury, pursuant to Texas Code of Criminal Procedure article 38.23, to disregard the recordings because they were allegedly obtained in violation of the law. Article 38.23 provides in part: "No evidence obtained ... in violation of ... [the] laws of the State of Texas ... shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). This statute further provides:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

*Id.*

The question is whether, under the facts of a particular case, the evidence raises an issue requiring a jury instruction. *Graham v. State*, 201 S.W.3d 323, 331 (Tex. App.-Houston [14th Dist.] 2006, pet. ref'd) (*citing Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Crim.App.1982)). When the evidence raises no such issue, the trial court acts properly in refusing a request to charge the jury with this instruction. *Id.* (*citing Murphy*, 640 S.W.2d at 299).

In the present case, appellant argues that recording his telephone conversations from the jail violated Texas Penal Code section 16.02, relating to interception of wire, oral, or electronic communication. *See* TEX. PENAL CODE ANN. § 16.02 (Vernon Supp.2006). Section 16.02(b)(1) provides, "A person commits an offense if the person ... intentionally intercepts, endeavors to intercept, or procures another person to intercept or endeavor to intercept a wire, oral, or electronic communication." *Id.* § 16.02(b)(1). An affirmative defense, however, exists when "a person acting under color of law intercepts ... a wire, oral, or electronic communication ... if one of the parties to the communication has given prior consent to the interception." *Id.* § 16.02(c)(3)(A).

At trial, appellant argued that, because the prompts and postings inform inmates only that their calls "may," rather than "shall," be recorded and monitored, inmates cannot be said to have consented to the recording. On appeal, however, he relies on testimony indicating that inmates are not asked whether they consent to the recording and do not consent to the recording in writing.[6]

---

**6.** The State argues that the telephone calls in question are not the kind of communication

Although we have found no published Texas case directly on point, the Wisconsin Court of Appeals in *State v. Riley* confronted similar facts and argument and applied substantively identical law to conclude that such recording did not violate that state's electronic surveillance law. 287 Wis.2d 244, 704 N.W.2d 635, 641 (2005). As in the present case, a telephone prompt notified an inmate that his call may be recorded. *Id.* at 637. As in the present case, the defendant focused on the fact that the telephone announcement stated only that the call "may" be recorded. *Id.* at 639.[7] Finally, the Wisconsin statute, like the Texas statute, provides that an individual acting under of color of law may lawfully intercept wire, oral, or electronic communications when one of the parties to the communication consented to the interception. *Id.* at 638; *see* Wis. Stat. § 968.31(2)(b) (2005–06) (stating that it is not unlawful under the Wisconsin Electronic Surveillance Control Law for "a person acting under color of law to intercept a wire, electronic or oral communication, where ... one of the parties to the communication has given prior consent to the interception"); *see also* 18 U.S.C.A. § 2511(2)(c) (West 2000) ("It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where ... one of the parties to the communication has given prior consent to such interception.").

The Wisconsin appellate court first referred to a series of federal cases in which courts interpreting comparable federal law concluded that an inmate gives implied consent to electronic surveillance when he is on notice that his telephone call is subject to monitoring and recording and nevertheless continues with the call. *See Riley*, 704 N.W.2d at 639 (citing cases). The court concluded:

> We therefore hold that so long as an inmate is given meaningful notice that his or her telephone calls over institutional phones are subject to surveillance, his or her decision to engage in conversations over those phones constitutes implied consent to such surveillance. Meaningful notice may include ... a monitoring notice posted by the outbound telephone, or a recorded warning that is heard by the inmate through the telephone receiver, prior to his or her making the outbound telephone call.

Riley received the requisite meaningful notice. Prior to phone calls placed from the jail telephones, the inmates hear the SBC announcement. The announcement warns inmates that the call "may be recorded." The fact that the announcement contains the permissive modal auxiliary verb "may" rather than the obligatory modal auxiliary verb "will" is of no consequence. By using the permissive "may," the announcement does not, as Riley suggests, merely inform inmates that the jail has the "capability" to record telephone calls; it also

---

to which section 16.02 applies and suggests the telephone calls are "oral communication," rather than "wire" or "electronic communication." The State also argues that 16.02 does not apply to these telephone calls because persons making calls over the inmate telephone system do not have a legitimate expectation of privacy in the content of their calls. *See* Tex.Code Crim. Proc. Ann. art. 18.20 § 1(2) (Vernon Supp.2006) (defining oral communication as "an oral communication uttered by a person exhibiting an expectation

that the communication is not subject to interception under circumstances justifying that expectation," and excluding "an electronic communication" from the term's definition). Given our conclusion regarding consent, we do not consider the State's argument.

7. The defendant in *Riley* also argued that there was no evidence he actually heard the telephone announcement. *Id.* at 639.

**404**

raises the possibility that the jail would proceed to record the calls. Such notice-a prerecorded message played over the telephone system informing inmates that outgoing calls are subject to surveillance-is sufficient to hold that an inmate has impliedly consented to monitoring or recording.

*Id.* at 640–41 (and citations omitted).

We are persuaded by the reasoning in *Riley* and the federal cases cited therein. It is undisputed that appellant's telephone conversations contained a prompt indicating that calls may be recorded or monitored. It is also undisputed that postings throughout the jail informed the inmates that their calls may be monitored or recorded. We therefore hold that, under the circumstances presented here, appellant impliedly consented to the recording of his telephone conversations. Consequently, the recording did not violate Texas Penal Code section 16.02. *See* TEX. PENAL CODE ANN. § 16.02(c)(3)(A).

The trial court did not abuse its discretion by denying appellant's request for an instruction under Texas Code of Criminal Procedure article 38.23(a). Accordingly, we overrule appellant's fourth issue.

## IV. CONCLUSION

Having overruled appellant's four issues, we affirm the judgment of the trial court.