Opinion issued February 18, 2010


















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00634-CR
__________
 
TELLY WAYNE FURY, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Cause No. 03CR1426
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Telly Wayne Fury, guilty of the offense of aggravated
assault of a public servant


 and assessed his punishment at confinement for 60 years.


 
In two points of error, appellant contends that the evidence is legally insufficient to
support the jury’s finding that appellant’s “hand and arm constituted a deadly
weapon” and that the State’s failure to produce photographs in violation of the trial
court’s discovery order precluded him from “fully evaluating” his case and pretrial
matters and “effectively preparing trial strategy.”
          We affirm.Factual and Procedural Background


Amanda Jones, the complainant, testified that while she was working as a jailer
at the Texas City Jail, she instructed appellant to enter his cell. Appellant then picked
her up, threw her into the cell, pinned her against the wall, and choked her to the
point that she “started not to breathe” and was lightheaded. The complainant
attempted to get her radio to call for help, but appellant knocked it out of her hand. 
She could not breathe because appellant’s arm was around her throat, and she feared
for her life. She then pleaded with appellant to stop, and she told appellant that she
had children. Appellant then pushed her up against the door, rubbed his penis on her,
placed his hands on her breasts and her crotch, and rubbed her crotch. Ultimately,
after the complainant assured appellant that she would not tell anyone of the assault,
appellant let her go and she called for assistance and exited the cell.
          During his cross-examination of the complainant, appellant asked her, “You
didn’t have any injuries to photograph?” and the complainant answered, “No.” Later
during cross-examination, appellant again asked the complainant about whether there
were any photographs of her injuries. This time, the complainant stated that there had
been photographs taken of her injuries. The following exchange took place:
          [Appellant]:           So, all we really have is your word saying all this
stuff happened. We don’t have any pictures. We
don’t have any video. We don’t have any injuries. 
All this horrible force was used. You were thrown
up against the wall. You were choked until you
were about to pass out and thought you were going
to die. Didn’t even leave any red marks on your
neck to take pictures of?
 
          [Complainant]:      I believe there is pictures. I’m not—that the jail
should have.
 
          [Appellant]:           That the jail should have?
 
          [Complainant]:      We took pictures with our jail camera we use to take
booking shots with.
 
          [Appellant]:           Where are they?
 
          [Complainant]:      I don’t have no idea. I don’t work there anymore.
 
          [Appellant]:           Pass the witness, Your Honor.
 
Following this testimony, appellant did not make any additional inquiry about the
photographs. 
          Stephen Rodriguez, who was in the same cell as appellant at the time of the
assault, testified that appellant grabbed the complainant, forced her into the cell,
threw her into the wall, and put his arm around her neck. The door to the cell then
automatically shut and locked. Rodriguez further testified that appellant started
choking the complainant and fondling her. Rodriguez noted that appellant had “a
good grip” and that the complainant was choking, could hardly speak, and was
gasping for air. Rodriguez was afraid for the complainant’s life. While appellant
was choking the complainant, appellant told her, “I could kill you bitch.” Appellant
also had his hands between the complainant’s legs and was “humping” the
complainant so it appeared he was trying to have sex with the complainant with his
clothes on. Appellant also warned Rodriguez, who was trying to calm appellant
down, to “get back” or that he would kill the complainant. After the complainant was
able to get out of the cell, appellant told Rodriguez, “I was going to rape that bitch.” 
          During closing argument, appellant argued that the fact that the State did not
present photographs of the complainant’s injuries supported the defensive theory that
the assault had not taken place as described by the complainant. Specifically,
appellant argued:
We have absolutely no injuries. We have no videos. We have no
photographs. If there had been substantial injuries—actually that’s not
true. Ms. Jones said photographs were taken. Do you think that if they
helped get a conviction of [appellant] that they would have found them? 
I’ll put it to you that there was nothing on the photographs to help the
State’s case and that’s why they’re not here. 
 
          The jury found that appellant intentionally, knowingly, or recklessly caused
bodily injury to the complainant with his hand or arm, and that appellant, through the
use of his hand or arm, used or exhibited a deadly weapon during the commission of
the assault. 
          Following his conviction, appellant timely filed a new trial motion,


 in which
he alleged that “the verdict was contrary to the law and evidence.” He also asserted
that the State’s failure to produce the photographs referred to by the complainant
during her cross-examination violated the trial court’s discovery order and constituted
grounds for a new trial under Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963). 
The trial court, after two hearings,


 granted appellant’s motion for new trial.



          The State, in a separate appeal, challenged the trial court’s order granting
appellant’s motion for new trial, and we abated appellant’s appeal pending the
outcome of the State’s appeal. See State v. Fury, 186 S.W.3d 67 (Tex.
App.—Houston [1st Dist.] 2005, pet. ref’d). The State, in its appeal, contended that
(1) the trial court erred in granting appellant’s motion for new trial on a ground not
pleaded by appellant, (2) the evidence was legally and factually sufficient to sustain
appellant’s conviction, and (3) there was no Brady violation to support granting
appellant’s motion for new trial. See id. 69–70. On October 20, 2005, in this separate
appeal, we held that the trial court abused its discretion in granting appellant’s motion
for new trial.


 Id. at 75–76. Accordingly, we vacated the trial court’s order granting
appellant’s motion for new trial and remanded the cause to the trial court for entry of
judgment consistent with the jury’s verdict. Id. at 75–76. We then ordered appellant
to proceed with the instant appeal from his conviction, which we now consider.



Photographs
          In his first point of error, appellant argues that the State’s failure to produce
photographs in violation of the trial court’s discovery order precluded him from “fully
evaluating” his case and pretrial matters and “effectively preparing trial strategy.” 
The State responds that the photographs of the complainant’s injuries were consistent
with her testimony and were cumulative and corroborative of the other evidence
presented to the jury. The State also contends that appellant’s failure to request a
continuance after he became aware of the photographs during trial waived any
complaint about the State’s alleged violation of the discovery order.
          We previously considered nearly identical arguments presented by appellant
and the State in the State’s appeal, and we held that the trial court abused its
discretion in granting appellant’s new trial motion. Fury, 186 S.W.3d 72–74.
Appellant, in the instant appeal, effectively asks us to reconsider our prior ruling that
the trial court would have erred in granting appellant a new trial on grounds of a
discovery order violation, a Brady violation, or newly discovered evidence. As we
noted in our prior opinion, under Brady, the State has an affirmative duty to disclose
evidence “favorable and material to a defendant’s guilt or punishment under the due
process clause of the Fourteenth Amendment.” Id. at 73 (citing Brady v. Maryland,
373 U.S. 83, 87–88, 83 S. Ct. 1194, 1196–97 (1963)); see also Harm v. State, 183
S.W.3d 403, 406 (Tex. Crim. App. 2006); Thomas v. State, 841 S.W.2d 399, 407
(Tex. Crim. App. 1992). A defendant is entitled to a new trial if (1) the State
suppresses evidence, (2) the evidence is favorable to the accused, and (3) the
evidence creates a probability sufficient to undermine the confidence in the outcome
of the proceeding, i.e., the evidence is material. Harm, 183 S.W.3d at 406; Thomas,
841 S.W.2d at 404. In regard to the second prong, “[f]avorable evidence is any
evidence that, if disclosed and used effectively, may make a difference between
conviction and acquittal and includes both exculpatory and impeachment evidence.” 
Harm, 183 S.W.3d at 408. “Exculpatory evidence may justify, excuse, or clear the
defendant from fault, while impeachment evidence is that which disputes or
contradicts other evidence.” Id. “Incorporated into the third prong, materiality, is a
requirement that [the] defendant must be prejudiced by the State’s failure to disclose
the favorable evidence.” Id. at 406.
          A motion for new trial based upon newly discovered evidence “shall be granted
an accused where material evidence favorable to the accused has been discovered
since trial.” Fury, 186 S.W.3d at 73 (citing Tex. Code Crim. Proc. Ann. art 40.001
(Vernon 2006)); see also Keeter v. State, 74 S.W.3d 31, 36 (Tex. Crim. App. 2002). 
Texas courts have used a four-part test in determining whether a trial court may grant
a new trial based on newly discovered evidence: (1) the newly discovered evidence
was unknown or unavailable to the movant at the time of his trial; (2) the movant’s
failure to discover or obtain the evidence was not due to a lack of diligence; (3) the
new evidence is admissible and is not merely cumulative, corroborative, collateral,
or impeaching; and (4) the new evidence is material and would probably cause a
different result in another trial.


 Fury, 186 S.W.3d at 73 (citing Keeter, 74 S.W.3d
at 36–37; Moore v. State, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994); State v.
Reynolds, 893 S.W.2d 156, 159 (Tex. App.—Houston [1st Dist.] 1995, no pet.)).
          In the instant case, once the complainant stated that there had been photographs
taken of her injuries with the jail camera and that the jail should have the
photographs, appellant did not request a continuance or take any additional action to
obtain and review the photographs. Fury, 186 S.W.3d at 74. Instead, appellant
argued to the jury that the lack of photographic evidence of the complainant’s injuries
actually supported his defense and cast doubt on the complainant’s and Rodriguez’s
testimony about the violence of appellant’s assault on the complainant. Appellant
waited until after the jury had found him guilty before complaining, for the first time
in his motion for new trial, about the complainant’s disclosure of the existence of the
photographs. We noted, in the State’s appeal, that by waiting to raise this issue for
the first time in his motion for new trial, appellant either waived any Brady error or
failed to show that any Brady error prejudiced him. Id. 
           Again, we note that the trial court, after its review of the photographs,
concluded that the photographs revealed marks on the complainant’s neck, redness
on her neck, face, ears and arms, and possible bruising of her arms. The trial court
stated that the photographs “appeared to show injuries consistent” with the
complainant’s trial testimony. We have reviewed the photographs, and, like the trial
court, we conclude that the photographs are supportive of the complainant’s trial
testimony and that she had visible redness and injuries on her neck and face. The
photographs contradict appellant’s theory at trial that there must have been
“absolutely no injuries” to the complainant because the State did not produce
photographic evidence of the injuries. Accordingly, we conclude that appellant failed
to show that any Brady error occurred or that any Brady error prejudiced him. See
id. 
          Similarly, in regard to any complaint about newly discovered evidence raised
in appellant’s brief, the record establishes that appellant became aware of the
photographs during his cross-examination of the complainant. Appellant’s failure to
request a continuance waives any complaint regarding this “newly discovered
evidence” or the State’s violation of a discovery order. See id. (citing Williams v.
State, 995 S.W.2d 754, 762 (Tex. App.—San Antonio 1999, no pet.); see also Lindley
v. State, 635 S.W.2d 541, 544 (Tex. Crim. App. 1982). Furthermore, appellant has
failed to show that this evidence was unknown or unavailable to him at the time of
his trial or that his failure to discover or obtain the photographs was not due to a lack
of diligence. Although the complainant initially stated that there were no
photographs of her injuries, she later unequivocally stated that there were
photographs of her injuries and that the photographs were taken with the jail’s
camera. Finally, as noted by the trial court, the photographs supported the
complainant’s and Rodriguez’s testimony that the complainant had suffered injuries
in the attack. The photographs depict significant red marks to the complainant’s face
and neck. Thus, we conclude that the photographs were merely cumulative and were
corroborative of the testimony presented to the jury. The photographs are not at all
favorable to appellant and do not undermine our confidence in the outcome of the
trial. See Harm, 183 S.W.3d at 406; Thomas, 841 S.W.2d at 404.
          Accordingly, we hold that appellant was not entitled to a new trial on the
grounds of newly discovered evidence, a Brady violation, or the violation of a
discovery order. We further hold that appellant, who elected not to seek a
continuance and who used the lack of photographic evidence to argue to the jury that
the complainant had not been injured in the assault, was not entitled to a new trial
based upon his argument presented in this appeal that he was precluded from fully
evaluating his case and preparing his trial strategy.


 
          We overrule appellant’s first point of error.
Legal Sufficiency
          In his second point of error, appellant argues that the evidence is legally
insufficient to support the jury’s finding that his “hand and arm constituted a deadly
weapon” because there is no evidence that he used, or intended to use, them in a
manner capable of causing death or serious bodily injury. Appellant asserts that there
is no testimony in the record “with regards to any martial arts training, special skills
or unusual strength of appellant,” appellant did not kill the complainant, and the
complainant’s injuries “were neither serious nor permanent.” Appellant also asserts
that his conviction is based solely on the “emotionally fueled testimony of two lay
witnesses” and there is no medical testimony showing that the complainant’s feelings
of numbness, shortness of breath, or nearing unconsciousness directly resulted from
the assault. 
          We review the legal sufficiency of the evidence by considering all of the
evidence in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a
reasonable doubt. Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)
(citing Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979)). 
In doing so, we give deference to the responsibility of the fact-finder to fairly resolve
conflicts in testimony, to weigh evidence, and to draw reasonable inferences from the
facts. Id. However, our duty requires us to “ensure that the evidence presented
actually supports a conclusion that the defendant committed” the criminal offense of
which he is accused. Id.
          A person commits the offense of aggravated assault of a public servant if he
intentionally, knowingly, or recklessly causes bodily injury to another whom the
person knows is a public servant while the public servant is lawfully discharging an
official duty, and the person uses or exhibits a deadly weapon during the commission
of the assault on the public servant. Tex. Penal Code Ann. § 22.02 (Vernon Supp.
2009).
          A “deadly weapon” includes “anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury.” Texas Penal Code Ann.
§ 1.07(a)(17)(B) (Vernon Supp. 2009). “‘Bodily injury’ means physical pain, illness,
or any impairment of physical condition.” Id. § 1.07(a)(8). A hand or a foot may be
a deadly weapon within the meaning of section 1.07(a)(17) “depending upon the
evidence shown.” Lane v. State, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004)
(citing Turner v. State, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983)). Indeed, almost
anything can be a deadly weapon depending upon the evidence shown. Id. at 191,
n.4. The injuries, if any, inflicted on the complainant are factors to be considered in
determining whether a hand or a foot was used as a deadly weapon. Id. at 191. The
jury may also consider all the surrounding facts, including the defendant’s words. 
Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983). Expert or lay testimony
may be “independently sufficient” to support a jury’s deadly weapon finding. 
Banargent v. State, 228 S.W.3d 393, 398–99 (Tex. App.—Houston [14th Dist.] 2007,
pet. ref’d) (citing English v. State, 647 S.W.2d 667, 668–69 (Tex. Crim. App. 1983)).
          The complainant testified that appellant picked her up with his hands and threw
her into the jail cell, appellant used his hands to pin her against the wall and choked
her to the point that she “started not to breathe” and was lightheaded. She feared that
appellant was going to kill her as a result of choking her. Rodriguez, the other inmate
in the cell at the time of the assault, testified that appellant grabbed the complainant,
forced her into the cell, threw her into the wall, and put his arm around her neck. He
further testified that the doors to the cell automatically shut and locked and appellant
started choking the complainant and fondling her. Rodriguez specifically testified
that appellant had “a good grip” and that the complainant was choking, could hardly
speak, and was gasping for air. Rodriguez was also afraid for the complainant’s life. 
Additionally, while appellant was choking the complainant, appellant told her, “I
could kill you bitch,” and, when Rodriguez tried to intervene, appellant told him to
“get back” or that he would kill her. Rodriguez further testified that, after the
complainant was able to get out of the cell, appellant told Rodriguez that he was
going to rape the complainant. 
          Considering all of the evidence in the light most favorable to the verdict, we
conclude that a rational trier of fact could have found beyond a reasonable doubt that
appellant’s hand and arm, given the manner of his use and intended use of them, were
capable of causing death and serious bodily injury. Accordingly, we hold that the
evidence is legally sufficient to support appellant’s conviction.
          We overrule appellant’s second point of error.
 
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Jennings, Hanks, and Bland.

Do not publish. See Tex. R. App. P. 47.2(b).