**Affirmed and Memorandum Opinion filed October 25, 2018.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-17-00852-CR

**JASON WAYNE CHARLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 412th District Court**
**Brazoria County, Texas**
**Trial Court Cause No. 79882-CR**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jason Wayne Charley of aggravated assault of a public servant and harassment of a public servant. In a single issue, appellant challenges the sufficiency of the evidence to support his conviction for aggravated assault. Specifically, appellant contends the evidence is legally insufficient to prove that he used or displayed a deadly weapon during his assault of a police officer. We affirm.

## Background

Angleton Police Department ("APD") Officer Roxanne Raper, in uniform and in a marked police vehicle, responded to a 911 call reporting a disturbance at a home in Angleton, Texas. When she arrived, she heard yelling and screaming coming from inside the home as she walked from her patrol vehicle to the front of the home. She drew her firearm, knocked on the door, and announced "police department."

A nude male, bloody and holding a knife, opened the door. Raper radioed for back-up and entered the doorway. The nude male, later identified as appellant, stood in front of his sister, who appeared "terrified" and was "crying and screaming"; the sister also held a knife. Raper, with her weapon drawn, told appellant to drop the knife. Appellant began pacing and rambling incoherently. Then, he stepped towards Raper and said, "I will fucking kill you," while brandishing the knife. Appellant dropped the knife, charged Raper, and pushed her backward with his fist, which knocked her outside the doorway. Appellant slammed the door closed.

Raper again radioed for back-up, then kicked the door open and re-entered the doorway to the home to protect appellant's sister. Raper saw that appellant held the knife again so she ordered him to drop it, and appellant complied. Appellant began squeezing a laceration on his arm and started to masturbate with his bloody hand, then he turned around and "grabb[ed] his bottom." Shortly after Raper re-entered the doorway to the home, Micah Edwards, a federal wildlife officer with the United States Fish and Wildlife Service, arrived in response to Raper's call for assistance. When Edwards arrived, he saw Raper with her weapon drawn and heard her order appellant to "drop the knife." Edwards drew his weapon to assist Raper. As he approached, appellant came into his view. Appellant was no longer holding a knife but had blood "all over his right arm and his crotch area." Edwards holstered his gun and put on sterile gloves to protect himself from the blood covering appellant.

2

Appellant made confusing remarks, and Edwards believed that he "was either a mental health patient or he was on some type of narcotics." Appellant refused to obey the officers' commands and started "flailing his arms" around. Edwards drew his taser and warned appellant he was "going to tase him" if he failed to comply with the officers' commands.

By this point, several other APD officers also arrived. Appellant resisted efforts to restrain him and "flicked" blood from his fingers toward the officers. After a brief struggle, the officers managed to handcuff appellant. Emergency medical technicians arrived at the scene and provided treatment to appellant. Neither the knife appellant brandished nor the knife his sister held were recovered at the scene. However, on the audio from Edwards's body camera recording, appellant can be heard asking for his knife and telling the officers that "it's in the room on the floor" when they asked where the knife was located. A crime scene technician photographed a kitchen knife on the floor in a bedroom.

Appellant was arrested and charged with aggravated assault of a peace officer and harassment of a public servant. A jury found him guilty as charged in the indictment. Appellant pleaded true to several enhancing offenses, and the jury sentenced him to sixty years' confinement for the aggravated assault charge and twenty-five years' confinement for the harassment charge. The trial court entered judgment on the jury's verdict, ordering the sentences to run concurrently. This appeal timely followed.

**Analysis**

In a single issue, appellant challenges the evidentiary sufficiency to support his conviction for aggravated assault of Officer Raper because the State did not establish that appellant used or exhibited a deadly weapon.[1]

We apply a legal-sufficiency standard of review in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Under this standard, we examine all the evidence adduced at trial in the light most favorable to the verdict to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Temple*, 390 S.W.3d at 360; *Criff v. State*, 438 S.W.3d 134, 136-37 (Tex. App.–Houston [14th Dist.] 2014, pet. ref'd). Accordingly, we will uphold the jury's verdict unless a rational fact finder must have had a reasonable doubt as to any essential element. *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *West v. State*, 406 S.W.3d 748, 756 (Tex. App.– Houston [14th Dist.] 2013, pet. ref'd).

A person commits the offense of aggravated assault on a public servant if he (1) intentionally or knowingly threatens a person that the actor knows to be a public servant with imminent bodily injury while the public servant is lawfully discharging an official duty and (2) uses or exhibits a deadly weapon during the assault. *See* Tex. Penal Code §§ 22.01(a)(2); 22.02(a)(2), (b)(2)(B). In today's case, appellant limits his sufficiency challenge to whether the evidence is legally sufficient to show

---

[1] Appellant does not challenge his conviction for harassment of a public servant. *See* Tex. Penal Code § 22.11(a)(3) (providing that a person commits harassment of a public servant "if, with the intent to assault, harass, or alarm, the person . . . causes another person the actor knows to be a public servant to contact the blood . . . of the actor . . . while the public servant is discharging an official duty").

that he used or exhibited a deadly weapon during the commission of this offense. *See id.* § 22.02(a)(2). Based on the proposition that a knife is not a deadly weapon per se, appellant argues that the State failed to present evidence sufficient to establish the particular knife appellant held as deadly. Specifically, appellant contends that the deadly weapon element is unsupported by legally sufficient proof because Raper was not injured, she did not provide "a positive description of the knife," and the knife was not introduced into evidence.

Under the Texas Penal Code, a weapon may be "deadly" either by design or use. *See* Tex. Penal Code § 1.07(a)(17); *see also Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). A kitchen knife is not a deadly weapon by design. *See* Tex. Penal Code § 1.07(a)(17)(A) (defining "deadly weapon" to include "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury"); *see also McCain v. State*, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000) (explaining that kitchen knives "are manifestly designed for other purposes and consequently, do not qualify as deadly weapons under subsection (A)"). However, the Penal Code also defines a "deadly weapon" to include "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code § 1.07(a)(17)(B).

The State need not show that the use or intended use of the weapon in question caused death or serious bodily injury; rather, the State must show only that the "use or intended use is *capable* of causing death or serious bodily injury." *Tucker*, 274 S.W.3d at 691-92; *see also McCain*, 22 S.W.3d at 503 ("an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury"). Further, the State need not introduce the weapon into evidence. *Banargent v. State*, 228 S.W.3d 393, 399 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Instead, either expert or lay testimony may suffice to support

5

a deadly weapon finding. *Id.* Finally, in determining whether an object qualifies as a deadly weapon, a fact finder may "consider words and other threatening actions by the defendant, including the defendant's proximity to the victim; the weapon's ability to inflict serious bodily injury or death, including the size, shape, and sharpness of the weapon; and the manner in which the defendant used the weapon." *Johnson v. State*, 509 S.W.3d 320, 323 (Tex. Crim. App. 2017); *see also Romero v. State*, 331 S.W.3d 82, 83-84 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) ("Intent to inflict serious bodily injury or death may be shown by evidence of assertive conduct by an attacker.").

Raper testified that appellant was holding a serrated table knife when she first confronted him.[2] According to Raper, appellant stood about ten feet away from her. Appellant took a step towards Raper and said, "I will fucking kill you." Raper testified that she feared for her life.

Based on this evidence, the jury reasonably could have inferred that the knife described by Raper was a deadly weapon from appellant's threatening words, his proximity to Raper, and his threatening actions in brandishing the knife. *See, e.g.*, *Johnson*, 509 S.W.3d at 324 ("A jury could have also reasonably inferred from Kimp's threats, his proximity to Amelia, and the brandishing of the knife, that the manner in which he used the knife, or intended to use the knife, rendered it capable of causing serious bodily injury or death."); *Clark v. State*, 444 S.W.3d 671, 678 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (jury may determine whether an appellant used a knife as a deadly weapon by weighing the evidence before it on case-by-case basis and drawing reasonable inferences from the evidence); *Hatchett*

---

[2] Raper described the serrated knife, with "possibly a wooden handle," as not being "super sharp like a steak knife. It looked like more kind of a little bit rounded but not as round as a butter knife, if that makes sense."

*v. State*, 930 S.W.2d 844, 848 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (concluding that evidence sufficiently supported finding that pocket knife was a deadly weapon even though appellant did not open the blade). Moreover, as noted above, appellant was recorded stating that his knife was "in the room on the floor," and a photograph of a sharp kitchen knife on the floor of a bedroom of the home was admitted into evidence.

Appellant relies on *Alvarez v. State*, 566 S.W.2d 612, 614 (Tex. Crim. App. [Panel Op.] 1978), to support his legal sufficiency challenge. In *Alvarez*, a panel of the Court of Criminal Appeals held that there was insufficient evidence of a deadly weapon in an aggravated assault case. *Id.* *Alvarez* predates the Court of Criminal Appeals' adoption of the legal sufficiency standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979), and it is unclear what standard of review the panel employed. *See Alvarez*, 566 S.W.2d at 614. At any rate, in *Alvarez*, the record lacked testimony concerning the size of the knife blade, although there was testimony that the knife looked sharp and that appellant's motions with the knife caused the victim to fear serious bodily injury or death. *Id.* In today's case, however, appellant verbally threatened to kill Raper while brandishing the knife and then lunged towards her and pushed her in the chest. These facts distinguish the situation in *Alvarez* from the present case.

Viewing this evidence in the light most favorable to the jury's verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that appellant used or exhibited a deadly weapon when he intentionally or knowingly threatened Officer Raper with imminent bodily injury. *See* Tex. Penal Code § 22.02(a)(2), (b)(2)(B), (c).

Accordingly, we overrule appellant's sole appellate issue.

**Conclusion**

Having overruled appellant's issue, we affirm the trial court's judgment.

/s/     Kevin Jewell
Justice

Panel consists of Justices Donovan, Wise, and Jewell.
Do Not Publish — Tex. R. App. P. 47.2(b).