NUMBER 13-09-00328-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


ERIK VILLARREAL, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 


On appeal from the 130th District Court

of Matagorda County, Texas.

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Garza



 Appellant, Erik Villarreal, was convicted of aggravated assault, a second-degree
felony. See Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 2009). The trial court
sentenced Villarreal to eight years' imprisonment. On appeal, Villarreal argues that: (1)
the evidence was legally insufficient to support the conviction; (2) the evidence was
factually insufficient to support the conviction; (3) the trial court erred by "failing to reject
the jury's verdict"; and (4) the jury's verdict impermissibly allowed a non-unanimous verdict. 
We affirm.

I. Background

 Shortly after midnight on May 1, 2006, Matagorda County Sheriff's Department
Deputy John Biehunko was dispatched to a residence where a domestic disturbance had
been reported. According to Deputy Biehunko, as soon as he arrived at the residence,
Araceli Figueroa (1) "approach[ed] me at my patrol car, her shirt completely bloody; her face
bloody; her small children, some of those had blood on them as well. And she was in a
hysterical state screaming, crying for me to please help her." Figueroa opened the door
to the patrol car, jumped into the back seat "pulling her kids inside with her" and said
"'Please get me out of here.'" Deputy Biehunko then entered the residence looking for
Villarreal, escorted him out, and arrested him after Figueroa positively identified him as her
assailant. Deputy Biehunko testified that he observed "a large cut on [Figueroa's] forehead
and bruised, busted up eye and some swelling to her face." Villarreal, on the other hand,
smelled "[o]f alcohol" but "appeared in a very calm, nonchalant manner the entire time."

 Deputy Biehunko then re-entered the residence to investigate further and "observed
a pretty good trail of blood . . . leading from the porch" that he "figured" was "coming from
[Figueroa's] head wound." He also observed blood "smears and drops" in the kitchen,
living room, and hallway of the residence. In the bedroom, Deputy Biehunko observed
"what appeared to be a struggle of some sort in there. The bathroom door had been
kicked in. There was a mirror that was affixed to the door that was shattered on the floor." 
He continued: "[I]t appeared there had been things thrown about in the area of the
bathroom to where the door was kicked. I believe there was pieces of, you know, just
things laying all about the floor there in that area."

 Photographs of the scene and of Figueroa's injuries, taken by Deputy Biehunko,
were entered into evidence. One of the photographs, entered into evidence as State's
exhibit 10, depicted what Deputy Biehunko described as a "[forty]-ounce beer bottle that
was half full that was used to strike the victim." Deputy Biehunko testified that he took that
photograph in the kitchen of the residence and that no one touched the bottle between the
time he first saw it and the time the photograph was taken. He acknowledged, though, that
he did not collect the bottle as evidence, nor did he know what happened to the bottle after
he completed his investigation. The State offered instead, as a demonstrative exhibit, a
bottle identical in size and weight to the one found in Figueroa's residence.

 On cross-examination, Deputy Biehunko stated that he did not recall that any of
Figueroa's children had actually been injured, even though they appeared to have blood
on them. He further stated that the blood he observed inside the residence "appeared to
be pretty fresh" because he was able to smear it with his shoe and "three-day old blood is
not going to smear."

 Laura Cervenka, a registered nurse at Matagorda General Hospital in Bay City,
Texas, at the time of the incident, testified that she was present at the hospital when
Figueroa was brought there by paramedics. According to Cervenka, Figueroa "had a lot
of dried blood to her facial area. We knew she had some head trauma. She was a little
anxious, upset, and stated she had been hit by a beer bottle." Cervenka testified that
Figueroa "had a laceration to the left frontal lobe of her head, an abrasion hematoma to
the right occipital [lobe] and she had some swelling and tissue contusion to the right
eyelid."

 Figueroa then took the stand and testified that she is 26 years of age and has three
children. She stated that she has known Villarreal for a bit more than ten years and that
they were "seeing each other" at the time of the incident. According to Figueroa, Villarreal
had come to her mother's house, where she lived, on the night in question. Figueroa
stated that Villarreal was "kind of upset" when he arrived; she presumed that this was
because she was out with friends the night before and had not answered a phone call from
him. Villarreal told Figueroa that he did not believe her story about why she had not
answered his call. The prosecutor then asked when the argument became violent;
Figueroa responded:

We were in the bedroom, and he had asked me how many guys or men I
had been with. And I told him I didn't want to answer that; and he told me,
"No, you need to tell me how many guys you've been with." He--I believe
at that time we were laying down. He got on top of me, grabbed me by the
hair and told me I had "till the count of three to tell me" and he started
counting and he started hitting me . . . [w]ith his fist.


Figueroa stated that, at some point, she was able to get away from Villarreal and run into
the bathroom. When she heard her approximately eighteen-month-old son crying, she
went to get him and the other children and brought them to a different bathroom in the
residence. Figueroa testified that "I had took the kids in there because I was scared
[Villarreal] was going to do something to them." Figueroa exited the bathroom and told
Villarreal to leave the residence. She stated: "I believe he went into the kitchen to go get
his beer that he had brought over, and that's when he hit me with the bottle." She stated
that he hit her "two or three times" with the bottle before "it slipped out of his hands" and
onto the floor. Figueroa's testimony continued:

Q. At what point did you try to contact the police?


A. After I told him to leave, we were already outside; and he had asked
me if I was going to speak to him after that. And he told me,
"Remember," and he said, "Just think about your answer because
that's going to determine whether I beat the hell out of you or not." 
And then he started asking for his cell phone, and I told him that it
was in the rest room that I had first went into. . . . So, when he went
back there, I ran to go check on my kids. I grabbed the phone. When
I ran back there, I called 911, and I ran back.


Figueroa noted that she has a one-inch scar on her forehead where Villarreal struck her
with the beer bottle. According to Figueroa, Villarreal told her that "[e]very time you look
in the mirror and you see that scar, you will remember me" or "you will think about me."

 On cross-examination, Figueroa acknowledged that she did not know how or when
the mirror on the door between the bathroom and bedroom had been shattered. Defense
counsel noted that, in her original statement to police, Figueroa had stated that Villarreal
threw the bottle at her, rather than merely striking her with it. Figueroa could not recall
making that statement to police; nor could she remember whether Villarreal had in fact
thrown the bottle at her on the night in question.

 At the close of the evidence, the trial court charged the jury on three offenses: 
aggravated assault, as well as the lesser included offenses of assault and deadly conduct. 
See id. § 22.01 (Vernon Supp. 2009) (assault), r§ 22.02 (aggravated assault), § 22.05
(Vernon 2003) (deadly conduct); see also Tex. Code Crim. Proc. Ann. art. 37.08 (Vernon
2006) ("In a prosecution for an offense with lesser included offenses, the jury may find the
defendant not guilty of the greater offense, but guilty of any lesser included offense."), art.
37.09 (Vernon 2006) (defining "lesser included offense"). The jury charge provided, in
pertinent part, as follows:

 Now, if you find from the evidence beyond a reasonable doubt that on
or about the 1st day of May 2006 in Matagorda County, Texas, the
defendant, Erik Villarreal, did then and there intentionally, knowingly and
recklessly cause bodily injury to Arceli Figueroa, by hitting her and the
defendant did then and there use or exhibit a deadly weapon, to-wit: a glass
bottle, during the commission of said assault, then you will find the defendant
guilty of Aggravated Assault as charged in the indictment.


 Unless you so find from the evidence beyond a reasonable doubt, or
if you have a reasonable doubt thereof, you will acquit the defendant of this
allegation and say by your verdict, "not guilty" of Aggravated Assault and
next proceed to consider whether the defendant is guilty of the offense of
Assault.


 . . . .


 Now, if you find from the evidence beyond a reasonable doubt that on
or about the 1st day of May 2006 in Matagorda County, Texas, the
defendant, Erik Villarreal, did then and there intentionally, knowingly or
recklessly cause bodily injury to Arceli Figueroa by hitting her, then you will
find the defendant guilty of the offense of Assault.


 Unless you so find from the evidence beyond a reasonable doubt, or
if you have a reasonable doubt thereof, you will acquit the defendant of this
allegation and say by your verdict, "not guilty" of Assault and next proceed
to consider whether the defendant is guilty of the offense of Deadly Conduct.


 . . . .


 Now, if you find from the evidence beyond a reasonable doubt that on
or about the 1st day of May 2006 in Matagorda County, Texas, the
defendant, Erik Villarreal, did then and there recklessly engage in conduct
that placed Arceli Figueroa in imminent danger of serious bodily injury by
hitting her, then you will find the defendant guilty of the offense of Deadly
Conduct.


 Unless you so find from the evidence beyond a reasonable doubt, or
if you have a reasonable doubt thereof, you will acquit the defendant and say
by your verdict, "not guilty" of Deadly Conduct.


 The jury returned verdicts of guilty as to all three counts, despite the charge's
admonition to the jury not to consider the two lesser included offenses unless it had a
reasonable doubt as to the aggravated assault charge. When the trial court read aloud the
jury's verdicts, defense counsel objected, stating that "there's a serious question of
confusion," that the verdict was "compromised" and that it was potentially not unanimous. 
Subsequently, at Villarreal's sentencing hearing, the trial court stated:

[O]n my own motion, I'm going to set aside a finding of the jury as to two
lesser findings that they did not follow the instructions of the Court's charge;
however, in their defense, I must say that the charge that was given by me
could have been much clearer as to what to do. There's no fault in the
charge to either counsel; it's the fault of the Court.


 The trial court then assessed punishment at eight years' imprisonment on the
aggravated assault charge. This appeal followed.

II. Discussion

A. Evidentiary Sufficiency

 By his first two issues, Villarreal argues that the evidence adduced at trial was
legally and factually insufficient to support his conviction.

 In conducting a legal sufficiency review, we consider the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt. Sanders v. State, 119 S.W.3d
818, 820 (Tex. Crim. App. 2003). We must give deference to "the responsibility of the trier
of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts." Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). We
are not required to determine whether we believe that the evidence at trial established guilt
beyond a reasonable doubt; rather, when faced with conflicting evidence, we must
presume that the trier of fact resolved any such conflict in favor of the prosecution, and we
must defer to that resolution. State v. Turro, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

 In conducting a factual sufficiency review, we consider the evidence in a neutral
light. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The verdict will
be set aside only if (1) it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and manifestly unjust, or (2) it is against the great weight and
preponderance of the evidence. Id. at 415 (citing Johnson v. State, 23 S.W.3d 1, 10 (Tex.
Crim. App. 2000)).

 Both legal and factual sufficiency are measured by the elements of the offense as
defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997); Adi v. State, 94 S.W.3d 124, 131 (Tex. App.-Corpus Christi 2002, pet.
ref'd). Under a hypothetically correct jury charge, Villarreal committed the offense of
aggravated assault if he: (1) intentionally, knowingly, or recklessly caused bodily injury to
Figueroa, and (2) used or exhibited a deadly weapon while doing so. See Tex. Penal
Code Ann. §§ 22.01(a)(1), 22.02(a)(2). A person acts intentionally with respect to a result
of his conduct when it is his conscious objective to cause the result. Id. § 6.03(a) (Vernon
2003). A person acts knowingly with respect to a result of his conduct when he is aware
that his conduct is reasonably certain to cause the result. Id. § 6.03(b). A person acts
recklessly with respect to a result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the result will occur. Id. § 6.03(c).

 Villarreal argues specifically that the evidence was insufficient to establish that he
acted with the requisite intent, in part because "[Figueroa] did not remember and never
said where [Villarreal] allegedly hit her with this bottle, the bottle that was never entered
into evidence." We disagree. The record reflects that, while Figueroa did not explicitly
state that Villarreal struck her in the forehead with the beer bottle, she did testify that the
attack caused her to start bleeding; that the scar on her forehead came about as a result
of the attack; and that Villarreal verbally threatened her before and after the attack. See
Tucker v. State, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008) (citing Morales v. State,
633 S.W.2d 866, 868-69 (Tex. Crim. App. 1982)) ("[T]he injuries suffered by the victim can
by themselves be a sufficient basis for inferring that a deadly weapon was used."). 
Moreover, to obtain a conviction for aggravated assault by deadly weapon, the State was
under no obligation to introduce into evidence the actual weapon allegedly used by the
defendant. (2) See Banargent v. State, 228 S.W.3d 393, 399 (Tex. App.-Houston [14th Dist.]
2007, pet. ref'd) (citing Morales, 633 S.W.2d at 868). (3) Here, the jury could have rationally
concluded from all the evidence adduced at trial that Villarreal possessed the requisite
intent to sustain a conviction of aggravated assault. See Grotti v. State, 273 S.W.3d 273,
283 (Tex. Crim. App. 2008) (citing Watson, 204 S.W.3d at 414-15); Manrique v. State, 994
S.W.2d 640, 649 (Tex. Crim. App. 1999) ("A jury may infer intent from any facts which tend
to prove its existence, including the acts, words, and conduct of the accused, and the
method of committing the crime and from the nature of wounds inflicted on the victims.").

 In arguing that the evidence was factually insufficient, Villarreal contends that
Figueroa's testimony "was used to cover the fact that Figueroa initiated this sexual
relationship that night and then attempted to sway the testimony in a way that it appeared
[Villarreal] was upset with her." He argues that "none of the physical evidence supports
Figueroa's allegations" and that "[t]here was nothing presented to the jury which
corroborates Figueroa's account of what occurred." Again, we disagree. The testimony
and photographs of Deputy Biehunko established that an incident took place which left
Figueroa and her children frightened and bloodied. Even if Figueroa's trial testimony was
the only evidence supporting conviction, we may not substitute our own determination for
that of the jury. See Ortiz v. State, 93 S.W.3d 79, 87-88 (Tex. Crim. App. 2002) (citing
Wesbrook v. State, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000)). We are not permitted
to "substantially intrude upon the jury's role as the sole judge of the weight and credibility
of witness testimony." Id. 

 Deferring to the jury's determination as to Figueroa's truthfulness, see Turro, 867
S.W.2d at 47, we conclude that the evidence was legally sufficient to support the
conviction. Additionally, we conclude that the jury's verdict was not "against the great
weight and preponderance of the evidence" or "so contrary to the overwhelming weight of
the evidence as to be clearly wrong and manifestly unjust." See Watson, 204 S.W.3d at
414-15 (citing Johnson, 23 S.W.3d at 10). The evidence was therefore factually sufficient
to support the conviction. Villarreal's first and second issues are overruled.

B. Form of Jury Verdict

 By his third and fourth issues, Villarreal argues that the trial court erred by "failing
to reject" the jury's verdict as to all three counts included in the jury charge. Specifically,
by his third issue, Villarreal contends that "the trial court's action in failing to reject the jury's
verdict amounted to an instructed verdict of guilty or constituted a comment on the weight
of the evidence." By his fourth issue, Villarreal argues that the jury's verdict "allowed the
jury to convict [him] of three separate offenses which created a non-unanimous verdict."

 These arguments are without merit. Although the jury violated the trial court's
instructions by returning guilty verdicts on all three charged counts, the trial court took the
appropriate action to remedy the defect by setting aside the verdicts on the two lesser
included offenses. See Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998)
(holding, where appellant was convicted of both aggravated sexual assault and indecency
with a child, a lesser included offense, that "[t]he proper remedy is to reform the judgment
by vacating the lesser conviction and sentence"); Rangel v. State, 179 S.W.3d 64, 67 (Tex.
App.-San Antonio 2005, pet. ref'd) (holding, where appellant was convicted of both
burglary of a habitation and aggravated assault, a lesser included offense, that "[t]he
appropriate remedy for any double jeopardy violation is to vacate one of the convictions");
Whittington v. State, 781 S.W.2d 338, 340 (Tex. App.-Houston [14th Dist.] 1989, pet. ref'd)
(holding, where appellant was convicted of both aggravated sexual assault and indecency
with a child, a lesser included offense, that the trial court "was correct in concluding that
the jury found appellant guilty [only] of the greater offense"); see also Gibson v. State, No.
06-07-00200-CR, 2008 Tex. App. LEXIS 4915, at *3-5 (Tex. App.-Texarkana July 2, 2008,
pet. ref'd) (mem. op., not designated for publication) (holding that "the trial court was
correct in accepting the jury's verdict for burglary and ignoring or dismissing its conviction
for aggravated assault," a lesser included offense). Because the trial court took this
appropriate remedial action, Villarreal cannot show that he has suffered any harm as a
result of the jury's improper verdict. See Tex. R. App. P. 44.2.

 Additionally, there is no support in the record for Villarreal's contention that the jury's
verdict may have been non-unanimous. The trial court instructed the jury that it must be
unanimous in order to return a guilty verdict on each particular count. Therefore, by
returning three guilty verdicts, the jury indicated that it was unanimous that the elements
of each of the three crimes had been proven beyond a reasonable doubt. Had the jury fully
complied with the instructions given to it, then it would have found Villarreal guilty of only
the greater offense and it would not have considered the lesser included offenses. See
Whittington, 781 S.W.2d at 340 ("It is axiomatic that a jury verdict need not be consistent
if one is talking about a multi-count verdict, because in that instance each count of the
charging instrument is considered separately, and a guilty verdict upon any count may
stand, provided that it is supported by the evidence.") (citing United States v. Varkonyi, 611
F.2d 84, 86 (5th Cir. 1980)). (4)

 Villarreal's third and fourth issues are overruled.

III. Conclusion

 The judgment of the trial court is affirmed.


 ________________________

 DORI CONTRERAS GARZA,

 Justice


Do Not Publish.

Tex. R. App. P. 47.2(b)

Delivered and filed the 

13th day of May, 2010.
1. Figueroa's first name is spelled variously as "Aricela," "Arceli," and "Araceli" in the record of the trial
court proceedings and in the appellate briefs.
2. The State notes on appeal that the beer bottle introduced as a demonstrative exhibit at trial "was
the same brand, size and texture as the one Villarreal used" to strike Figueroa. According to the State's brief,
"[a] forty-ounce Olde English Brand '800' beer bottle is a forty-ounce Olde English Brand '800' beer bottle. 
One is the same as another, whether it is used for drinking or bashing."
3. Villarreal did not argue, at trial or on appeal, that the beer bottle should not have been considered
a "deadly weapon" under the statutory definition. See Tex. Penal Code. Ann. § 1.07(a)(17)(B) (Vernon Supp.
2009) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of
causing death or serious bodily injury").
4. This is not, as Villarreal suggests, a situation where some jurors may have voted to convict on one
count whereas other jurors voted to convict on other counts. Instead, all the jurors were in agreement as to
all counts. The fact that the jury's verdicts as to the two lesser included offenses were later vacated by the
trial court does not change this fundamental fact.