

# NUMBER 13-09-00328-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ERIK VILLARREAL,**                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                     **Appellee.**

### On appeal from the 130th District Court
### of Matagorda County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Garza

Appellant, Erik Villarreal, was convicted of aggravated assault, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon Supp. 2009). The trial court sentenced Villarreal to eight years' imprisonment. On appeal, Villarreal argues that: (1) the evidence was legally insufficient to support the conviction; (2) the evidence was factually insufficient to support the conviction; (3) the trial court erred by "failing to reject the jury's verdict"; and (4) the jury's verdict impermissibly allowed a non-unanimous verdict. We affirm.

### I. BACKGROUND

Shortly after midnight on May 1, 2006, Matagorda County Sheriff's Department Deputy John Biehunko was dispatched to a residence where a domestic disturbance had

been reported. According to Deputy Biehunko, as soon as he arrived at the residence, Araceli Figueroa[1] "approach[ed] me at my patrol car, her shirt completely bloody; her face bloody; her small children, some of those had blood on them as well. And she was in a hysterical state screaming, crying for me to please help her." Figueroa opened the door to the patrol car, jumped into the back seat "pulling her kids inside with her" and said "'Please get me out of here.'" Deputy Biehunko then entered the residence looking for Villarreal, escorted him out, and arrested him after Figueroa positively identified him as her assailant. Deputy Biehunko testified that he observed "a large cut on [Figueroa's] forehead and bruised, busted up eye and some swelling to her face." Villarreal, on the other hand, smelled "[o]f alcohol" but "appeared in a very calm, nonchalant manner the entire time."

Deputy Biehunko then re-entered the residence to investigate further and "observed a pretty good trail of blood . . . leading from the porch" that he "figured" was "coming from [Figueroa's] head wound." He also observed blood "smears and drops" in the kitchen, living room, and hallway of the residence. In the bedroom, Deputy Biehunko observed "what appeared to be a struggle of some sort in there. The bathroom door had been kicked in. There was a mirror that was affixed to the door that was shattered on the floor." He continued: "[I]t appeared there had been things thrown about in the area of the bathroom to where the door was kicked. I believe there was pieces of, you know, just things laying all about the floor there in that area."

Photographs of the scene and of Figueroa's injuries, taken by Deputy Biehunko, were entered into evidence. One of the photographs, entered into evidence as State's exhibit 10, depicted what Deputy Biehunko described as a "[forty]-ounce beer bottle that was half full that was used to strike the victim." Deputy Biehunko testified that he took that photograph in the kitchen of the residence and that no one touched the bottle between the time he first saw it and the time the photograph was taken. He acknowledged, though, that he did not collect the bottle as evidence, nor did he know what happened to the bottle after

---

[1] Figueroa's first name is spelled variously as "Aricela," "Arceli," and "Araceli" in the record of the trial court proceedings and in the appellate briefs.

he completed his investigation. The State offered instead, as a demonstrative exhibit, a bottle identical in size and weight to the one found in Figueroa's residence.

On cross-examination, Deputy Biehunko stated that he did not recall that any of Figueroa's children had actually been injured, even though they appeared to have blood on them. He further stated that the blood he observed inside the residence "appeared to be pretty fresh" because he was able to smear it with his shoe and "three-day old blood is not going to smear."

Laura Cervenka, a registered nurse at Matagorda General Hospital in Bay City, Texas, at the time of the incident, testified that she was present at the hospital when Figueroa was brought there by paramedics. According to Cervenka, Figueroa "had a lot of dried blood to her facial area. We knew she had some head trauma. She was a little anxious, upset, and stated she had been hit by a beer bottle." Cervenka testified that Figueroa "had a laceration to the left frontal lobe of her head, an abrasion hematoma to the right occipital [lobe] and she had some swelling and tissue contusion to the right eyelid."

Figueroa then took the stand and testified that she is 26 years of age and has three children. She stated that she has known Villarreal for a bit more than ten years and that they were "seeing each other" at the time of the incident. According to Figueroa, Villarreal had come to her mother's house, where she lived, on the night in question. Figueroa stated that Villarreal was "kind of upset" when he arrived; she presumed that this was because she was out with friends the night before and had not answered a phone call from him. Villarreal told Figueroa that he did not believe her story about why she had not answered his call. The prosecutor then asked when the argument became violent; Figueroa responded:

> We were in the bedroom, and he had asked me how many guys or men I had been with. And I told him I didn't want to answer that; and he told me, "No, you need to tell me how many guys you've been with." He—I believe at that time we were laying down. He got on top of me, grabbed me by the hair and told me I had "till the count of three to tell me" and he started counting and he started hitting me . . . [w]ith his fist.

Figueroa stated that, at some point, she was able to get away from Villarreal and run into

3

the bathroom. When she heard her approximately eighteen-month-old son crying, she went to get him and the other children and brought them to a different bathroom in the residence. Figueroa testified that "I had took the kids in there because I was scared [Villarreal] was going to do something to them." Figueroa exited the bathroom and told Villarreal to leave the residence. She stated: "I believe he went into the kitchen to go get his beer that he had brought over, and that's when he hit me with the bottle." She stated that he hit her "two or three times" with the bottle before "it slipped out of his hands" and onto the floor. Figueroa's testimony continued:

Q.     At what point did you try to contact the police?

A.     After I told him to leave, we were already outside; and he had asked me if I was going to speak to him after that. And he told me, "Remember," and he said, "Just think about your answer because that's going to determine whether I beat the hell out of you or not." And then he started asking for his cell phone, and I told him that it was in the rest room that I had first went into. . . . So, when he went back there, I ran to go check on my kids. I grabbed the phone. When I ran back there, I called 911, and I ran back.

Figueroa noted that she has a one-inch scar on her forehead where Villarreal struck her with the beer bottle. According to Figueroa, Villarreal told her that "[e]very time you look in the mirror and you see that scar, you will remember me" or "you will think about me."

On cross-examination, Figueroa acknowledged that she did not know how or when the mirror on the door between the bathroom and bedroom had been shattered. Defense counsel noted that, in her original statement to police, Figueroa had stated that Villarreal threw the bottle at her, rather than merely striking her with it. Figueroa could not recall making that statement to police; nor could she remember whether Villarreal had in fact thrown the bottle at her on the night in question.

At the close of the evidence, the trial court charged the jury on three offenses: aggravated assault, as well as the lesser included offenses of assault and deadly conduct. *See id.* § 22.01 (Vernon Supp. 2009) (assault), r§ 22.02 (aggravated assault), § 22.05 (Vernon 2003) (deadly conduct); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.08 (Vernon 2006) ("In a prosecution for an offense with lesser included offenses, the jury may find the defendant not guilty of the greater offense, but guilty of any lesser included offense."), art.

37.09 (Vernon 2006) (defining "lesser included offense"). The jury charge provided, in pertinent part, as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of May 2006 in Matagorda County, Texas, the defendant, Erik Villarreal, did then and there intentionally, knowingly and recklessly cause bodily injury to Arceli Figueroa, by hitting her and the defendant did then and there use or exhibit a deadly weapon, to-wit: a glass bottle, during the commission of said assault, then you will find the defendant guilty of Aggravated Assault as charged in the indictment.
>
> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of this allegation and say by your verdict, "not guilty" of Aggravated Assault and next proceed to consider whether the defendant is guilty of the offense of Assault.
>
> . . . .
>
> Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of May 2006 in Matagorda County, Texas, the defendant, Erik Villarreal, did then and there intentionally, knowingly or recklessly cause bodily injury to Arceli Figueroa by hitting her, then you will find the defendant guilty of the offense of Assault.
>
> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant of this allegation and say by your verdict, "not guilty" of Assault and next proceed to consider whether the defendant is guilty of the offense of Deadly Conduct.
>
> . . . .
>
> Now, if you find from the evidence beyond a reasonable doubt that on or about the 1st day of May 2006 in Matagorda County, Texas, the defendant, Erik Villarreal, did then and there recklessly engage in conduct that placed Arceli Figueroa in imminent danger of serious bodily injury by hitting her, then you will find the defendant guilty of the offense of Deadly Conduct.
>
> Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict, "not guilty" of Deadly Conduct.

The jury returned verdicts of guilty as to all three counts, despite the charge's admonition to the jury not to consider the two lesser included offenses unless it had a reasonable doubt as to the aggravated assault charge. When the trial court read aloud the jury's verdicts, defense counsel objected, stating that "there's a serious question of confusion," that the verdict was "compromised" and that it was potentially not unanimous.

5

Subsequently, at Villarreal's sentencing hearing, the trial court stated:

> [O]n my own motion, I'm going to set aside a finding of the jury as to two lesser findings that they did not follow the instructions of the Court's charge; however, in their defense, I must say that the charge that was given by me could have been much clearer as to what to do. There's no fault in the charge to either counsel; it's the fault of the Court.

The trial court then assessed punishment at eight years' imprisonment on the aggravated assault charge. This appeal followed.

## II. DISCUSSION

### A. Evidentiary Sufficiency

By his first two issues, Villarreal argues that the evidence adduced at trial was legally and factually insufficient to support his conviction.

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The verdict will be set aside only if (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust, or (2) it is against the great weight and preponderance of the evidence. *Id.* at 415 (citing *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim. App. 2000)).

6

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, Villarreal committed the offense of aggravated assault if he: (1) intentionally, knowingly, or recklessly caused bodily injury to Figueroa, and (2) used or exhibited a deadly weapon while doing so. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2). A person acts intentionally with respect to a result of his conduct when it is his conscious objective to cause the result. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts recklessly with respect to a result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c).

Villarreal argues specifically that the evidence was insufficient to establish that he acted with the requisite intent, in part because "[Figueroa] did not remember and never said where [Villarreal] allegedly hit her with this bottle, the bottle that was never entered into evidence." We disagree. The record reflects that, while Figueroa did not explicitly state that Villarreal struck her in the forehead with the beer bottle, she did testify that the attack caused her to start bleeding; that the scar on her forehead came about as a result of the attack; and that Villarreal verbally threatened her before and after the attack. *See Tucker v. State*, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008) (citing *Morales v. State*, 633 S.W.2d 866, 868-69 (Tex. Crim. App. 1982)) ("[T]he injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used."). Moreover, to obtain a conviction for aggravated assault by deadly weapon, the State was under no obligation to introduce into evidence the actual weapon allegedly used by the defendant.[2] *See Banargent v. State*, 228 S.W.3d 393, 399 (Tex. App.–Houston [14th Dist.]

---

[2] The State notes on appeal that the beer bottle introduced as a demonstrative exhibit at trial "was the same brand, size and texture as the one Villarreal used" to strike Figueroa. According to the State's brief, "[a] forty-ounce Olde English Brand '800' beer bottle is a forty-ounce Olde English Brand '800' beer bottle.

2007, pet. ref'd) (citing *Morales*, 633 S.W.2d at 868).[3] Here, the jury could have rationally concluded from all the evidence adduced at trial that Villarreal possessed the requisite intent to sustain a conviction of aggravated assault. *See Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008) (citing *Watson*, 204 S.W.3d at 414-15); *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) ("A jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims.").

In arguing that the evidence was factually insufficient, Villarreal contends that Figueroa's testimony "was used to cover the fact that Figueroa initiated this sexual relationship that night and then attempted to sway the testimony in a way that it appeared [Villarreal] was upset with her." He argues that "none of the physical evidence supports Figueroa's allegations" and that "[t]here was nothing presented to the jury which corroborates Figueroa's account of what occurred." Again, we disagree. The testimony and photographs of Deputy Biehunko established that an incident took place which left Figueroa and her children frightened and bloodied. Even if Figueroa's trial testimony was the only evidence supporting conviction, we may not substitute our own determination for that of the jury. *See Ortiz v. State*, 93 S.W.3d 79, 87-88 (Tex. Crim. App. 2002) (citing *Wesbrook v. State*, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000)). We are not permitted to "substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Id.*

Deferring to the jury's determination as to Figueroa's truthfulness, *see Turro*, 867 S.W.2d at 47, we conclude that the evidence was legally sufficient to support the conviction. Additionally, we conclude that the jury's verdict was not "against the great weight and preponderance of the evidence" or "so contrary to the overwhelming weight of

One is the same as another, whether it is used for drinking or bashing."

[3] Villarreal did not argue, at trial or on appeal, that the beer bottle should not have been considered a "deadly weapon" under the statutory definition. *See* TEX. PENAL CODE. ANN. § 1.07(a)(17)(B) (Vernon Supp. 2009) (defining "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury").

the evidence as to be clearly wrong and manifestly unjust." *See Watson*, 204 S.W.3d at 414-15 (citing *Johnson*, 23 S.W.3d at 10). The evidence was therefore factually sufficient to support the conviction. Villarreal's first and second issues are overruled.

## B.    Form of Jury Verdict

By his third and fourth issues, Villarreal argues that the trial court erred by "failing to reject" the jury's verdict as to all three counts included in the jury charge. Specifically, by his third issue, Villarreal contends that "the trial court's action in failing to reject the jury's verdict amounted to an instructed verdict of guilty or constituted a comment on the weight of the evidence." By his fourth issue, Villarreal argues that the jury's verdict "allowed the jury to convict [him] of three separate offenses which created a non-unanimous verdict."

These arguments are without merit. Although the jury violated the trial court's instructions by returning guilty verdicts on all three charged counts, the trial court took the appropriate action to remedy the defect by setting aside the verdicts on the two lesser included offenses. *See Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998) (holding, where appellant was convicted of both aggravated sexual assault and indecency with a child, a lesser included offense, that "[t]he proper remedy is to reform the judgment by vacating the lesser conviction and sentence"); *Rangel v. State*, 179 S.W.3d 64, 67 (Tex. App.–San Antonio 2005, pet. ref'd) (holding, where appellant was convicted of both burglary of a habitation and aggravated assault, a lesser included offense, that "[t]he appropriate remedy for any double jeopardy violation is to vacate one of the convictions"); *Whittington v. State*, 781 S.W.2d 338, 340 (Tex. App.–Houston [14th Dist.] 1989, pet. ref'd) (holding, where appellant was convicted of both aggravated sexual assault and indecency with a child, a lesser included offense, that the trial court "was correct in concluding that the jury found appellant guilty [only] of the greater offense"); *see also Gibson v. State*, No. 06-07-00200-CR, 2008 Tex. App. LEXIS 4915, at *3-5 (Tex. App.–Texarkana July 2, 2008, pet. ref'd) (mem. op., not designated for publication) (holding that "the trial court was correct in accepting the jury's verdict for burglary and ignoring or dismissing its conviction

9

for aggravated assault," a lesser included offense). Because the trial court took this appropriate remedial action, Villarreal cannot show that he has suffered any harm as a result of the jury's improper verdict. *See* TEX. R. APP. P. 44.2.

Additionally, there is no support in the record for Villarreal's contention that the jury's verdict may have been non-unanimous. The trial court instructed the jury that it must be unanimous in order to return a guilty verdict on each particular count. Therefore, by returning three guilty verdicts, the jury indicated that it was unanimous that the elements of each of the three crimes had been proven beyond a reasonable doubt. Had the jury fully complied with the instructions given to it, then it would have found Villarreal guilty of only the greater offense and it would not have considered the lesser included offenses. *See Whittington*, 781 S.W.2d at 340 ("It is axiomatic that a jury verdict need not be consistent if one is talking about a multi-count verdict, because in that instance each count of the charging instrument is considered separately, and a guilty verdict upon any count may stand, provided that it is supported by the evidence.") (citing *United States v. Varkonyi*, 611 F.2d 84, 86 (5th Cir. 1980)).[4]

Villarreal's third and fourth issues are overruled.

## III. CONCLUSION

The judgment of the trial court is affirmed.

_____
DORI CONTRERAS GARZA,
Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
13th day of May, 2010.

---

[4] This is not, as Villarreal suggests, a situation where some jurors may have voted to convict on one count whereas other jurors voted to convict on other counts. Instead, *all* the jurors were in agreement as to *all* counts. The fact that the jury's verdicts as to the two lesser included offenses were later vacated by the trial court does not change this fundamental fact.

10