Affirmed and Memorandum Opinion filed August 23, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00416-CR

___________________

 

James Skyler kerby, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 344th District Court

Chambers County,
Texas



Trial Court Cause No. 15333

 



 

 

MEMORANDUM OPINION

            Appellant, James Skyler Kerby, was convicted by a jury
of aggravated assault.  See Tex. Penal Code Ann. § 22.02(a)(1) (West
2011).  The jury assessed appellant’s punishment at two years’ confinement in
the Institutional Division of the Texas Department of Criminal Justice with a
finding that appellant had never before been convicted of a felony and
recommended a suspended sentence.  The trial court entered a judgment of
conviction and placed appellant on community supervision for a period of five
years.  See Tex. Code Crim. Proc. Ann. art. 42.12 (West 2009).  We
affirm.

Factual and Procedural Background

            On
March 27, 2009 Robert Frazee and his wife Patty were attending the O’Reilly
Spring Nationals drag races at Raceway Park in Chambers County, Texas.  About
6:00 p.m., the races were halted due to rain and many of the people attending
the races were returning to their vehicles and exiting the parking lots.  The
Frazees were parked in the Top Eliminator Club parking area.  Mr. Frazee was
driving a 2007 Chevrolet Tahoe and his wife was riding in the front passenger
seat as they made their way toward the exit from the Top Eliminator Club
parking area.

            Appellant,
along with his wife and several friends, also attended the O’Reilly drag races that
day.  Appellant and his wife, Sandy, initially drove to the residence of their
friend Steve Douget, where they met not only Douget, but also Henry and Karen
Rabalais.  Once the Kerbys arrived, the friends loaded items, including a
cooler of beer, for their planned tailgating activities into appellant’s four-door
Ford pickup truck, and left for the track.  Appellant, along with his wife and
friends, arrived at the race track at approximately noon and paid to park in
the Top Eliminator Club parking area.

            After
appellant had parked his truck, everyone except appellant consumed a beer.  At
that point in time, they all entered the track area to watch the drag races.  A
couple of hours later, they left the race area and went back to appellant’s
truck where they set-up a grill and prepared food.  The friends continued to
consume beer.[1] 
After completing their tailgating, the friends went back into the drag racing
area where they remained until they decided to leave about 5:00 or 6:00 p.m. 
After returning to appellant’s truck, they checked to make certain their
tailgating items were secured, loaded into the truck, and joined a line of
traffic making its way toward the exit from the Top Eliminator Club parking.[2]

            There
was a single exit from the Top Eliminator Club parking lot and Mr. Frazee was
in the line of traffic leading directly to that exit.  Appellant’s vehicle was
in a converging line of traffic merging into Mr. Frazee’s line of traffic.  Mr.
Frazee noticed a vehicle lurch toward his Tahoe that looked like it “was trying
to drive into the side of [his ] vehicle.”  The lurching vehicle stopped about twelve
inches from the side of Mr. Frazee’s Tahoe.  Mr. Frazee pulled ahead in line
and the lurching vehicle pulled into line behind him.  The next thing Mr.
Frazee noticed was a beer can hitting the back window of his Tahoe.[3]  Both Mr. Frazee
and his wife observed beer foam running down the window.

Mr. Frazee put his Tahoe
into park and got out to check for damage.  Mr. Frazee saw a beer can sitting
on the ground next to his Tahoe and then heard appellant, standing next to his
vehicle, say, “I guess it’s a race day thing.”  Thinking appellant had seen who
had thrown the beer can, an angry Mr. Frazee approached appellant and said,
“What the hell is going on?”  Appellant, also angry, simultaneously moved
toward Mr. Frazee and he asked, “How come you didn’t let me out?”  After a few
more words were exchanged, appellant turned around as if he was going to walk
away, but then he suddenly turned back around and punched Mr. Frazee in the
throat with his fist.[4] 
Mr. Frazee fell back against his Tahoe.  Mr. Frazee testified that he
immediately noticed his voice had changed and that it was difficult to
breathe.  Mr. Frazee was able to tell appellant he was about to go to jail.  A
second man wearing a green shirt told Mr. Frazee he was lucky, that he was
going to “beat his ass;” and that if he had been the one who had hit him, he
would not have stopped at one punch.  At that point, a man wearing a yellow
shirt came up and was telling everyone to get back in their cars and start
moving.  Mr. Frazee refused to leave until the police had arrived.

Eventually track
personnel arrived and called for police and paramedics.  At that point,
appellant backed his truck up and moved away from the scene.  After police
officers arrived, some stayed with Mr. Frazee while others ran after and
stopped appellant’s truck.   The officers who remained at the scene sought out
witnesses and discovered one person who admitted seeing what had happened. 
Phil Schneider testified during appellant’s trial and told the jury appellant
was the aggressor and hit Mr. Frazee once in the upper chest or throat. 

Once paramedics arrived,
they examined Mr. Frazee, determined his injury was potentially severe, and
then transported him to San Jacinto Hospital, the local hospital.  Mr. Frazee
was placed in a wheelchair once he arrived at the emergency room and he waited
approximately four hours.  During that time, the condition of his throat
worsened until he completely lost his voice.  After Mr. Frazee was moved into
an examining room he was sent for x-rays and a CAT scan.  Soon after that, Mr.
Frazee’s throat swelled shut and his lips turned blue.  Emergency room
personnel intervened, intubated Mr. Frazee and administered licocaine with
decondron through a nebulizer.  As a result of these efforts, Mr. Frazee
regained his ability to breathe.  Emergency room personnel diagnosed Mr. Frazee
with laryngospasm,[5]
determined he needed a higher level of care than was available at San Jacinto Hospital,
and transferred him by ambulance to Memorial-Hermann Hospital.[6] 

For two or three weeks
after he was punched in the throat, Mr. Frazee was required to take medication
to prevent him from vomiting and he had difficulty speaking for a couple of
months.  At trial, thirteen months after he was hit, Mr. Frazee’s voice was deeper
than it had been prior to the assault.  In addition, Mr. Frazee still choked
easily while eating, which requires that he chew very small bites of food and
avoid salads and tart foods like salad dressing.

Discussion

            Appellant
raises a single issue on appeal.  In that issue, appellant contends the
evidence is insufficient to support his conviction for aggravated assault.

A.        The
standard of review and applicable law.

            In
his single issues on appeal, appellant contends the evidence is legally and
factually insufficient to support his conviction for aggravated assault. 
However, a majority of the judges of the Texas Court of Criminal Appeals have
determined that “the Jackson v. Virginia legal-sufficiency standard is
the only standard that a reviewing court should apply in determining whether
the evidence is sufficient to support each element of a criminal offense that
the State is required to prove beyond a reasonable doubt.”  Brooks v. State,
323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).[7]  Therefore, in
this case, we do not separately refer to legal or factual sufficiency.  See
Pomier v. State, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010,
no pet.) (applying a single standard of review as required by Brooks); see
also Caddell v. State, 123 S.W.3d 722, 726–27 (Tex. App.—Houston [14th
Dist.] 2003, pet. ref’d) (explaining that this court is bound to follow its own
precedent).

In a sufficiency review,
we view all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L. Ed. 2d 569 (1979); Salinas v.
State, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005).  The jury, as the sole
judge of the credibility of the witnesses, is free to believe or disbelieve all
or part of a witness’ testimony.  Jones v. State, 984 S.W.2d 254, 257
(Tex. Crim. App. 1998).  The jury may reasonably infer facts from the evidence
presented, credit the witnesses it chooses to, disbelieve any or all of the
evidence or testimony proffered, and weigh the evidence as it sees fit.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  Reconciliation of
conflicts in the evidence is within the jury’s discretion, and such conflicts
alone will not call for reversal if there is enough credible evidence to
support a conviction.  Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim.
App. 1986).  An appellate court may not re-evaluate the weight and credibility
of the evidence produced at trial and in so doing substitute its judgment for
that of the fact finder.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim.
App. 2000).  Inconsistencies in the evidence are resolved in favor of the
verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  We
do not engage in a second evaluation of the weight and credibility of the
evidence, but only ensure the jury reached a rational decision.  Muniz v.
State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); Harris v. State,
164 S.W.3d 775, 784 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d).

B.        Analysis

A person commits
aggravated assault if he commits assault and (1) causes serious bodily injury
to another; or (2) uses or exhibits a deadly weapon during the commission of
the assault.  Tex. Penal Code Ann. § 22.02(a)(1); Ferrel v. State, 55
S.W.3d 586, 589 (Tex. Crim. App. 2001).  Only the first, serious bodily injury,
is at issue in this appeal.

Appellant contends his
conviction should be reversed because the evidence is insufficient to prove
beyond a reasonable doubt that Mr. Frazee suffered serious bodily injury as a
result of appellant punching him in the throat.  Initially, appellant asserts
the evidence is insufficient to establish that Mr. Frazee suffered an injury
with a substantial risk of death.  In support of this contention, appellant
points to the testimony of his expert witness, Dr. Louis Train, who reviewed
Mr. Frazee’s medical records and testified that while he believed Mr. Frazee
had suffered an injury as a result of being punched in the throat, he did not
think his injury created a substantial risk of death.  In addition, appellant
asserts the evidence is insufficient to establish that Mr. Frazee suffered either
permanent disfigurement or protracted loss or impairment of the function of any
bodily member or organ as a result of being punched in the throat.  Because it
is dispositive of this appeal, we need only address the first ground, substantial
risk of death, for establishing serious bodily injury.  See Banargent v.
State, 228 S.W.3d 393, 399 (Tex. App.—Houston [14th Dist.] 2007, pet.
ref’d) (“Serious bodily injury is bodily injury plus one or more of the
following effects: (1) a substantial risk of death, (2) death, (3) serious
permanent disfigurement, (4) protracted loss of function of any bodily member,
(5) protracted impairment of the function of any bodily member, (6) protracted
loss of the function of any bodily organ, or (7) protracted impairment of the
function of any bodily organ.”).

“Bodily injury” means
physical pain, illness, or any impairment of physical condition.  Tex. Penal
Code Ann. § 1.07(a)(8); Eustis v. State, 191 S.W.3d 879, 883 (Tex.
App.—Houston [14th Dist.] 2006, pet. ref’d).  “Serious bodily injury” is
defined as “bodily injury that creates a substantial risk of death or that
causes death, serious permanent disfigurement, or protracted loss or impairment
of the function of any bodily member or organ.”  Tex. Penal Code Ann. §
1.07(a)(46); Ferrel, 55 S.W.3d at 590.  Substantial risk of death “is a
risk that gives rise to apprehension of danger to life.”  Moore v. State,
739 S.W.2d 347, 353 (Tex. Crim. App. 1987) (en banc).  In order to establish
bodily injury that creates a substantial risk of death, the prosecution “must
present relevant and probative evidence from which a rational trier of fact
could infer beyond a reasonable doubt that the bodily injury the victim
sustained created a substantial risk of death from the injury itself….”  Id.
at 352.  A person who receives injuries is qualified to express an opinion
about the seriousness of those injuries.  Hart v. State, 581 S.W.2d 675,
677 (Tex. Crim. App. 1979).  Whether an injury constitutes serious bodily
injury must be determined on a case-by-case basis.  Id.; Banargent,
228 S.W.3d at 399.

Here, it was undisputed
that appellant hit Mr. Frazee in the throat.  Mr. Frazee testified about the
injury he sustained as a result of appellant punching him in the throat. 
According to Mr. Frazee, after he was hit, it was difficult to breathe and the
paramedics told him his injury was potentially severe.  Mrs. Frazee testified
that after Mr. Frazee was hit, he had difficulty breathing and his voice was
raspy.  Mr. Frazee also explained that after he arrived at the emergency room,
his throat swelled up and closed off preventing him from breathing, which made
his lips turn blue.  According to Mr. Frazee, he believed he was going to die. 
Mr. Frazee’s condition required immediate medical intervention including
intubation and medication.

The medical records also
confirm this life threatening episode.  In addition, the medical records and
the testimony of Jonathan Lamb, the paramedic responsible for transferring Mr.
Frazee to Memorial-Hermann Hospital, establish that Mr. Frazee was transferred
because his injury could have required a higher level of care than was
available at San Jacinto Hospital.  That same evidence also establishes that
there was a risk that during the transfer Mr. Frazee’s condition could
deteriorate and death was a possible consequence if that occurred.  We conclude
this evidence, when viewed in the appropriate light, is sufficient evidence to
support appellant’s conviction for aggravated assault.  See Hart v. State,
581 S.W.2d 675, 676 (Tex. Crim. App. 1978) (relying on medical records to
establish serious bodily injury); Banargent, 228 S.W.3d at 399-400
(relying on the complainant’s testimony to establish serious bodily injury); Coshatt
v. State, 744 S.W.2d 633, 635-36 (Tex. App.—Dallas 1987, pet. ref’d)
(relying on the complainant’s testimony as well as medical records to establish
serious bodily injury).

We also conclude Dr.
Train’s testimony does not change this result.  As the sole judge of the
credibility of the witnesses, the jury could have chosen to disbelieve Dr.
Train’s testimony that, after reviewing appellant’s medical records, he did not
believe Mr. Frazee had suffered a life threatening injury.  Jones, 984
S.W.2d at 257.

The jury could also have
rationally disbelieved Dr. Train’s conclusion that Mr. Frazee did not suffer an
injury with a substantial risk of death for several reasons.  First, on cross-examination,
Dr. Train testified that a patient is intubated when he cannot breathe and that
his opinion might change if Mr. Frazee had been intubated at San Jacinto
Hospital.  Mr. Frazee’s testimony indicates he was intubated when his throat
swelled up and prevented him from breathing.  Second, Mr. Frazee’s medical
records reveal that while at San Jacinto Hospital he was cyanotic.  Dr. Train
explained that cyanotic means purple lips, which is a condition that results when
a human body does not get enough air.  Third, the medical records indicate Mr.
Frazee was transferred to Memorial-Hermann Hospital because he potentially
needed a higher level of care than what was available at San Jacinto Hospital
if Mr. Frazee’s condition suddenly deteriorated.  Finally, Mr. Frazee’s medical
records indicate that one risk associated with transferring Mr. Frazee to
Memorial-Hermann Hospital was that his condition might deteriorate while in
transit which might cause his death.

Having determined the
evidence recited above is sufficient evidence from which a rational jury could
have concluded beyond a reasonable doubt that appellant committed aggravated
assault against Mr. Frazee, we overrule appellant’s single issue on appeal.

Conclusion

            Having
overruled appellant’s issue on appeal, we affirm the trial court’s judgment.

            

                                                                                    

                                                                        /s/        John
S. Anderson

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Seymore, and McCally.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1] Appellant testified that
he initially did not feel well when he arrived at the race track, but felt
better after eating and he admitted consuming an unspecified amount of beer at
the race track.  Henry Rabalais testified during appellant’s trial and he admitted
consuming six or seven beers while at the race track.  Sandy Kerby also
testified and admitted each of the friends consumed an unspecified amount of
beer at the race track.  In fact, Sandy Kerby testified she did not know how
many beers she consumed but it was enough for her to feel “slightly buzzed.” 
Karen Rabalais also admitted drinking an unknown quantity of beer that day,
either at Douget’s house or at the race track.  Steve Douget did not testify
during appellant’s trial.





[2] Appellant was driving
while Henry Rabalais occupied the front passenger seat.  Karen Rabalais was in
the rear passenger seat behind her husband, appellant’s wife was in the middle,
and Steve Douget was riding the rear seat behind appellant.





[3] During appellant’s trial,
Karen Rabalais admitted that she leaned out of right rear passenger window and
threw the beer can that hit Mr. Frazee’s window.





[4] Appellant testified
during his trial and admitted hitting Mr. Frazee; however, he argued it was
done in self-defense.





[5] Laryngospasms are throat
spasms that can contract the throat muscles into a closed position thereby
cutting off the person’s ability to breathe.





[6] The attending emergency
room physician determined that even though sending Mr. Frazee to
Memorial-Hermann Hospital by ambulance risked his life, the risk of keeping him
at the local hospital was greater because it did not have the level of care Mr.
Frazee potentially needed: an ear, nose, and throat surgeon who could perform a
tracheotomy if Mr. Frazee’s condition worsened.





[7] Nonetheless, this does
not alter the constitutional authority of the intermediate courts of appeal to
evaluate and rule on questions of fact.  See Tex. Const. art. V, § 6(a) (“[T]he decision of [courts of
appeal] shall be conclusive on all questions of fact brought before them on
appeal or error.”).